MOORE v. DOUGLASS et al.

Decided April 12, 1879.

Absent, Johnson, Judge.

1879 Special Term.

1. A case in which the defendants in an action of unlawful entry and detainer were held to have waived their right to move the court to quash the original summons issued in the cause, for an insufficient description of the premises claimed to be withheld, under the act of the Legislature passed February 27, 1864. See Acts of Legislature of 1864, pp. 13 and 14.

2. In an action of unlawful entry and detainer the complaint, on which the original summons or warrant was issued by the justice under said act, may be looked to by the court in aid of the description of the premises contained in the warrant or summons.

3. An instruction prayed should be pertinent, and there should generally be evidence in the cause tending to prove the case the instruction supposes to exist, otherwise the instruction should be rejected as tending to confuse and mislead the jury, as well as for not being pertinent.

4. If the evidence tends to prove one state of facts, and the instruction prayed supposes and is predicated upon an opposite state of facts, the existence of which there is no evidence tending to prove, it is not generally error for the court to refuse the instruction.

5. The nature of the possession, to which this summary remedy applies, is not confined to a possession by actual occupancy or enclosure.

6. Title draws after it possession of property not in the adverse possession of another.

7. Actual possession of part of a tract of land under a bona fide claim and color of title to the whole is possession of the whole, or so much thereof as is not in the adverse possession of others.

8. And in such case the party in actual possession of such part has a sufficient possession of the residue of the tract, to entitle him to the action of unlawful entry and detainer against a wrong-doer who enters upon such residue, who has not the right of entry thereon. But the owner of such residue, or those authorized under him, may lawfully enter upon such residue without force and hold the same.

9. In a proceeding of unlawful entry or detainer if the defendant has entered unlawfully, the plaintiff is entitled to recover without any regard to the question of his right of possession; and this though the land, from which he is ousted, is the land of the party who ousted him.

Appeal from a judgment of the circuit court of Wood county rendered on the 30th day of December, 1870, in a cause in said court then pending, wherein George H. Moore was plaintiff, and William Douglass and S. Woodward were defendants allowed on the petition of said defendants.

Hon. George Loomis, formerly judge of the circuit court of Wood county, rendered the judgment appealed from.

The facts of the case are sufficiently stated in the opinion of the Court.

*C. Boggess* and *John A. Hutchinson,* for appellants, cited the following authorities:

1 W. Va. 1; *Id.* 308.

*Goff & Camden,* for appellee, cited the following authorities:

Acts 1864, p. 13 ; 12 Gratt. 462; 1 W. Va. 14, 15; 11 Gratt. 600; 14 Gratt. 526 ; 9 W. Va. 184; 24 Gratt. 519 ; 9 W. Va. 23, 23 ; 16 Gratt. 410 ; 1 Wash. 153 ; 13 How. 150 ; 3 Pet. 459 ; 8 Wheat. 699 ; 4 Cranch 421 ; 8 W. Va. 371 ; 7 W. Va. 724; 10 Gratt. 1; 11 Gratt. 300 ; *Id.* 587 ; *Id.* 172 ; 12 Gratt. 462; 5 W. Va. 542 ; 8 W. Va. 259.

*(Margin note: 1879 Special Term. Moore v. Douglass et al.)*

1879
Special Term.

Moore
v.
Douglass *et al.*

HAYMOND, JUDGE, delivered the opinion of the Court :

This is an action of unlawful entry and detainer. On the 28th day of September, 1867, T. Devaughn, a justice of Walker township in the county of Wood, issued a summons, directed to a constable of said township in said county, commanding him to summon the defendants to appear before said justice on the 5th day of October, 1867, at one o'clock P. M., at his office near Walker station on the line of the Northwestern Virginia Railroad, called the Parkersburg Branch Railroad, in said township, to answer the complaint of George H. Moore (plaintiff) for unlawfully entering upon and detaining from him, against his consent, the possession of a tract of land on "Twin Lick" run, a branch of Whiteoak fork of Walker's creek, being part of lot number twenty-four, as laid down and designated on Farrow's plat of the property of J. J. Jackson, Jr., James M. Jackson, William H. Small and Ezekiel Mount ; wherefore the plaintiff claims $100.00 damages. On the return day the plaintiff and defendants appeared before the justice ; and the defendants filed their answer to said summons, which in substance amounts to a plea of not guilty, and other matter hereinafter mentioned. On the trial, which was on the return day of the summons, the justice rendered judgment, that the plaintiff recover of the defendants the possession of the premises in the complaint mentioned.

The complaint filed in the cause is, that George H. Moore complains of William Douglass and S. Woodward for that they unlawfully entered upon, and unlawfully detain from the said George H. Moore, the possession of the following described tract of land, situate "in Walker township, in said county of Wood, on Twin Lick run, a branch of the White Oak fork of Walker's creek, containing one-half acre, more or less, being a part of the lot of land which, by deed bearing date the 26th day of November, 1866, was leased by J. J. Jack-

son, Jr., James M. Jackson, W. H. Small and Ezekiel Mount to said George H. Moore, and thus described, being a part of lot number twenty-four, as laid down and designated on Farrow's plat of the property of said Jacksons, Small and Mount; and said William Douglass and S. Woodward have so entered upon and detained the possession thereof from the said George H. Moore, without his consent, within two days from the date hereof," &c.

From the said judgment of the justice, so rendered in the cause in favor of the plaintiff, the defendants appealed on the 8th day of October, 1867, to the circuit court of said county.

On the 14th day of December, 1867, the parties appeared to the cause in said circuit court, and on motion of the plaintiff (appellee in said circuit court) the cause was continued until the next term, at the cost of the appellee. Whereupon, by consent, it was ordered that the surveyor of said county do go upon the land in controversy, in the warrant and proceedings mentioned, and survey and lay out the same as either party should require, and return four plats thereof to the court at its next term.

Afterwards on the 13th day of April, 1869, until which time the cause was continued by virtue of the law, the parties again appeared to the cause by their attorneys and on their motion it was ordered by the court that the surveyor of the said county should go upon the land in controversy, at such time as the parties shall appoint and survey and lay out the same as either party should require, and return five fair plats and reports thereof to the court. Again, on the 27th day of September, 1869, the parties appeared by their attorneys; and it was agreed that the cause should be continued until the next term at the plaintiff's costs. And it was further agreed that any additional surveying, which might be desired by either party, might be done under the "former order of survey" in the cause.

Afterwards, on the 25th day of April, 1870, the cause was continued at the costs of the appellee; and leave was given either party to have the county surveyor do any further surveying that might be necessary.

Afterwards on the 14th day of December, 1870, the parties again appeared by their attorneys; and the appellants moved the court to quash "the warrant issued in the cause by the justice, on the ground that said warrant does not fully describe the premises," which motion the court overruled; and thereupon a jury of good and lawful men, who being selected and drawn by ballot and sworn well and truly to "enquire whether the appellants, Douglass and Woodward, unlawfully withheld from the appellee, George H. Moore, the premises in controversy and the amount of damages sustained by the appellee by reason of such detention, and a true verdict render according to the evidence; and the jury after hearing the evidence and arguments of counsel rendered their verdict as follows: "We, the jury find that the defendants did unlawfully enter upon the premsies of the plaintiff prior to the institution of this suit, and we further find that at the date of the summons issued in this cause, the defendants were in possession of, and did unlawfully detain from the plaintiff, all that certain piece of ground, being part of the premises in said summons mentioned, bounded and described and designated on the plat of surveyor J. S. A. Farrow made and filed in this cause marked number one as follows, and shaded green on said plat: Commencing at the point marked 'Locust,' and running thence to letter 'G,' and thence to the poplar at 'C.' and thence a straight line to the beginning at the 'Locust,' and that they had not so detained possession thereof for two years prior to the institution of this suit, and we therefore find for the plaintiff said premises as described herein."

Whereupon on motion of the appellants (the defendants) judgment upon said verdict was suspended for the time being; but afterwards and during the same term of the court the parties, by their attorneys, again appeared in

court; and the defendants moved the court to set aside the verdict of the jury, rendered against them in the cause, and grant them a new trial in the premises, upon the ground that the said verdict was contrary to the evidence, which motion the court overruled, and rendered judgment that the plaintiff recover against the defendants possession of the premises in the verdict of the jury described, and his costs by him about his suit in this behalf expended, and awarded a writ of possession, &c.

It appears by a memorandum at the foot of said judgment, that "upon the trial of this cause the defendants excepted to an opinion of the court, and tendered a bill of exceptions marked number one, and two other bills of exceptions marked X. and Y., and the court received and signed bills marked X. Y. and ordered them to be made part of the record in this cause."

By the bills of exceptions "X. Y.," it appears that the plaintiff, to support the issue on his part, gave in evidence to the jury a deed of lease from Walter Keeler of New York city to J. J. Jackson, Jr., James M. Jackson, William H. Small and Ezekiel Mount, of Wood county bearing date the 24th day of November, 1865, whereby the said Keeler granted and leased unto the said Jacksons, Small and Mount "all the following described piece or parcel of land lying and being in the counties of Wood and Ritchie, in the State of West Virginia, and being part of what is known as the Joseph Sims land, and described as follows, to-wit: All that certain piece or parcel of land unsold and unconveyed by the said Walter Keeler lying between what was formerly known and regarded as the 'Fox and Sims' line, and what is now known as the true 'Fox and Sims' line, or what may hereafter be established as the true 'Fox and Sims' line, on survey number twenty-seven of said Sims survey; the said lease to be for the purpose of boring for petroleum, rock, or other oils, and other mineral substances, and to continue for the term of twenty years from the date hereof." This deed of lease appears to have been duly ac-

knowledged by the parties thereto on the 25th day of November, 1865, before a notary of Wood county, and afterwards on the 30th day of November, 1865, the said deed of lease was admitted to record in the recorder's office of said county of Wood. And also a deed of lease from J. J. Jackson, Jr., J. M. Jackson, Wm. H. Small and Ezekiel Mount of the county of Wood aforesaid to George H. Moore, dated the 26th day of November, 1866, whereby the said Jacksons, Small and Mount "granted, demised and (for the purpose of mining and excavating for coal, salt or salt springs, rock or carbon oil, or any other valuable mineral substances) let unto" said George H. Moore, "all that certain tract of land situated in Wood county and State of West Virginia, described as follows, to-wit: being lot number twenty-four, as laid down and designated on Farrow's plat of the property of the parties of the first part on Twin Lick branch of White Oak, in Wood county. To have and to hold the said premises for the said purpose only unto the said Moore, his executors, &c. from the said 26th day of November, 1866, for and during and until the 26th day of November, 1885, thence next ensuing," &c. Also a plat and certificate of J. S. A. Farrow, surveyor of Wood county, being the plat of sub-division aforesaid, (See plat), first having proved said plat by said Farrow. Plaintiff also gives in evidence the plats and reports of surveyor Farrow made in this cause. (See reports and plats).

It further appears that the plaintiff gave evidence tending to prove that the lessors of the plaintiff took and held the premises described in the said lease of Keeler to Jackson and others, in the spring of 1864, claiming said property as their own, to the extent of the boundaries of said lease; that they leased a portion of the property in the summer and fall of 1864 and spring of 1865, to divers persons, who went on the same at that time, and bored wells for oil at several different localities thereon; and that becoming satisfied that said Walter Keel-

er's title to the same was better than theirs, they made the contract of lease before referred to, on the 24th day of November, 1865; that in December, 1865, and in January, 1866, they had a portion of their land run off and sub-divided in lots, as is set out in the plat and certificate hereinbefore referred to of J. S. A. Farrow, surveyor of Wood county; that the lot marked number twenty-four on said plat is the lot embraced in plaintiff's deed of lease, and that the portion of the same which is the matter in controversy is shaded green on the plat of the surveyor made in this cause, and is bounded as follows on said plat: By the line running from the "Locust" to the letter "G," thence a straight line to the letter "C," and thence a straight line to the beginning at the "Locust."

It also appears, that the plaintiff further gave evidence tending to prove that he entered upon and took possession of his said lot described in his lease, under a parol agreement with said Jackson and others, early in the fall of 1865, claiming the boundaries of said lot number twenty-four, as afterwards reduced to writing, by his lease hereinbefore referred to, and that his said claim embraced the said triangular piece shaded green on said plat; that he continued in the quiet and peaceable enjoyment of said lot from said time until the summer or fall of 1867, when the defendants entered upon the same and erected their derricks, and commenced boring a well, and that on the 28th day of September, 1867, this suit was instituted.

It also appears that the plaintiffs further gave evidence tending to show that the lessors of the plaintiff were either themselves or by some one claiming under them in the actual and continuous possession of some portion of their land, claiming the boundaries embraced by their lease from Keeler, from the time they entered and first took possession thereof in 1864, until the said defendants entered upon the plaintiff's lot in September, 1867.

1879
Special Term.

Moore
v.
Douglass et al.

It also appears that the plaintiff further gave evidence tending to prove that there was no actual continuous possession adverse to the said plaintiff, or those under whom he claims, within the boundaries of the said lease from said Keeler to said Jackson and others, prior to the time the defendants entered on a portion of said lot number twenty-four, as heretofore set out.

It also appears that the plaintiff also further gave evidence tending to show that the red dotted line laid down on the said plat of the surveyor made in this cause, running from the letter "A," thence to the letter "G," and thence to the letter "N," was what was formerly known and regarded as the "Fox and Sims" line and that the line on said plat running from the letter "F" to the "locust," and thence on to the letter "M," was what is since known and regarded as the true "Fox and Sims" line on survey number twenty-seven; that lots number twenty-six and twenty-seven, as laid down on said plat, were what is known as Sims's survey; and that lot number twenty-eight, as laid down on said plat, was what is known as the Fox survey; and that no evidence was given to restrict said "Fox and Sims" line west of the locust, unless it is contained in the papers made a part of this bill of exceptions.

It also appears that the plaintiff further gave evidence tending to prove that long prior to the actual entry of defendants upon this disputed territory, he commenced and bored oil wells on his said lot; and that he erected a house within the boundaries of said triangle shaded green on the line from the "locust" to the letter "C," and boarded his hands therein while he was so operating upon said lot under said lease from Jackson and others, and resided therein a portion of the time with his family, and so occupied the said house at the time the said defendants entered upon the said lot; that the said house was entirely northeast of said line, running from the locust to the letter "G;" and that said lot number

twenty-four extended for some distance northwest of said line; and that he bored two wells northwest of said line; and that one of them was producing oil when the defendants entered upon said lot, erected said derrick and commenced boring said oil well.

By said bill of exceptions it further appears, that the defendants then gave in evidence a copy of a deed from Walter Keeler and wife to Mary Gale, of Westchester county, New York, wife of Edmund L. Gale, bearing date the 7th day of March, 1854, by which the said Keeler and wife conveyed to said Mary Gale, her heirs, and assigns forever, all that piece or parcel of land situate, lying and being in the county of Ritchie, in the State of Virginia, being part of tract number twenty-six of Worth's chain of surveys bounded as follows: "Beginning at the point of intersection of the north easterly side of tract number twenty-seven with. the northwesterly side of tract number twenty-six, running along the dividing line between said two tracts south forty-three and one-half east six hundred and fifty-nine poles to a sugar tree on the southeasterly line of tract number twenty-six; thence along said line north twenty-six and one-half east sixty-three and one-half poles to a white oak tree; thence north forty-three and one-half west six hundred and fifty-nine poles to a white oak tree; thence south forty-six and one-half west sixty-three and one-fourth poles to the place of beginning, excepting and reserving thereout all that part of said premises sold to Nutter, Boice & Webb, containing four hundred and seventy acres, and that part of aforesaid premises sold to M. Nutter, containing one hundred and thirty acres, together with all and singular," &c. This is a deed of general warranty and appears to have been duly acknowledged by the grantors on the 7th day of March, 1854, and was duly admitted to record on the 24th day of November, 1862.

It also appears that the defendants gave in evidence

copies of surveys number twenty-six and twenty-seven of said Sims survey and a copy of survey number twenty-eight of said Fox survey, and also a copy of a grant to Joseph Sims assignee of Solomon Smith from the Commonwealth of Virginia· bearing date the 20th day of February, 1786, for "a certain tract or parcel of land containing four thousand acres by survey bearing date the 23d day of December, 1784, lying and being in the county ot Harrison,·adjoining on the southwest end of his survey number twenty-five and bounded as followeth, to-wit: "Beginning at a white oak marked P, number twenty-six corner to said survey, and running thence south forty-five degrees west nine hundred and seventy-two poles to a sugar tree ; north forty-five degrees west six hundred and fifty-nine poles to a white oak ; north forty-five degrees east nine hundred and seventy-two poles to a black oak ; south forty-five degrees east six hundred and fifty-nine poles along the line of his survey to the beginning."

It also appears that defendants gave in evidence a copy of a grant from the Commonwealth of Virginia to Joseph Sims, assignee of Thomas Chambers, bearing date the 20th day of February, 1786, for a certain tract of land containing four thousand acres by survey, dated the 23d day of December, 1784, and lying and being in the county of Harrison adjoining his survey number twenty-six on the southwest end and bounded as follows, to-wit: "Beginning at a sugar tree corner to said survey and running thence south forty-five degrees west four hundred and eighty-six poles to a pine marked number twenty-seven ; north forty-five degrees west one thousand three hundred and eighteen poles to a white oak ; north forty-five degrees east four hundred and eighty-six poles to a beach ; south forty-five degrees east one thousand three hundred and eighteen poles to the beginning ;" and also a grant from the Commonwealth of Virginia to Benjamin Wyncoop, assignee of John Morton, assignee of Joseph Sims, who was

assignee of Simon Welch, dated the 20th February, 1786, for a certain tract or parcel of land containing four thousand acres by survey bearing date the 23d day of December, 1784, lying and being in the county of Harrison, adjoining on the northwest side of his survey number twenty-six and bounded as follows, to-wit: "Beginning at a beach marked number twenty-eight and running thence north forty-five degrees east nine hundred and seventy-two poles to a chestnut oak; south forty-five degrees east six hundred and fifty-nine poles to a black oak; south forty-five degrees west nine hundred and seventy-two poles along a line of his survey to a white oak; north forty-five degrees west six hundred and fifty-nine poles to the beginning."

And it further appears that the defendants also gave evidence tending to prove that the plaintiff's occupancy of his said lease was confined to the northwest side of the line from "G" to the "locust," and not upon the land in dispute; and also evidence tending to show that the house built by the plaintiff on said premises was built by the consent of the defendants.

It also appears that the defendants further gave evidence tending to prove that E. L. Gale and wife leased a certain piece of land to the Ritchie County Petroleum Company, on the 31st day of March, 1865, and executed a deed of lease for the same, which was not produced, and which included the parcel of land in controversy; and that the defendant, Woodward, as the agent of said company, entered under said lease and commenced work on the 13th day of June, 1865, entirely outside of the boundaries of the land as claimed by said Jackson and others from Keeler, and northeast of the "locust," and north of the line running from the letter "F" to the "locust" as laid down on said plat of the survey in this cause, and after boring for oil for sometime unsuccessfully, ceased operations thereon; and that nothing was done, except to cut wood across said line occasionally, until the entry of the defendants in 1867 as hereinbefore

set out; and that on the 22d of June, 1867, the said defendant Douglass became the lessee of the said Ritchie Petroleum Company; and that subsequently he assigned an interest therein to said Woodward, when the defendants entered upon and took possession under the same, of the portion of said lot number twenty-four, in the manner before set out; and that when they went thereon the piece was in its natural state, and without any improvement thereon except as hereinbefore described.

It was proved that the said Walter Keeler, who leased to said Jacksons and others, was the same person who made the deed to the said Mary Gale. And it further appears by said bill of exceptions, that the defendants also gave evidence to prove that the said Woodward, from the time he took possession of said land leased to The Ritchie County Petroleum Company until the institution of this suit, continued to claim the whole of the land embraced in said lease. And thereupon the defendants asked the court to instruct the jury as follows:

"No. 5. If the jury believe from the evidence that the line designated on the plat of surveyor Farrow from the 'locust' to letter 'M', was the line formerly known and regarded as the Fox and Sims line on survey number twenty-seven, and that the line from letter 'G' to 'N' on said plat, was on the 24th day of November, 1865, the date of the deed from Walter Keeler to the lessee of the plaintiff then known as the 'Fox and Sims' line, or that there has since been established, as the true 'Fox and Sims' line, any line on the northwest side of and terminating in the line from the 'locust' north forty-five degrees east, then the said deed from the said Keeler to the lessees of the plaintiff does not embrace any part of the land in controversy; and if the jury further believe that the land in controversy, at the time the defendants entered thereupon, was not in the actual possession of the plaintiff, then they must find for the defendants.

"6. If the jury believe from the evidence, that the true line of the Fox survey is not further southeas

than the line from the 'locust' north forty-five degrees east, then the land between the Fox and Sims line on lot number twenty-seven, as formerly known and regarded, or at any time thereafter known or established, cannot include any part of the triangle shaded green—the land in dispute—and the said Jacksons, Small and Mount, the lessees of the plaintiff acquired no right thereto by virtue of their deed from said Walter Keeler."

To the giving of which instructions the plaintiff objected and the court sustained the objection, and refused to give said instructions or either of them, but instructed the jury as follows:

"1st. That if the jury believe from the evidence that the plaintiff, under the lease made to him by J. J. Jackson, Jr., and others, entered into and took quiet and peaceable possession of the premises embraced in said lease, claiming the same thereunder up to the boundaries thereof, and that the defendants unlawfully or forcibly entered upon his said possession and ousted him from the same, or any part thereof, within two years prior to the institution of this suit, then the plaintiff is entitled to recover the same in this action, or such part thereof as he was ousted of without regard to the question of title.

"2d. That if the jury believe from the evidence that the plaintiff entered into and took posession of his lease, claiming the same as set out in instruction number one, and the defendants entered upon his possession and ousted him from the same, or any part thereof, claiming to hold the same under E. L. Gale and wife, who claimed under the deed from Walter Keeler to Mary Gale, then, if they further believe that the boundaries contained in said deed do not cover or embrace the land in controversy, or any part thereof, and that they did not hold possession for two years prior to the institution of this suit, they must find for the plaintiff for so much of said lease as he was ousted from by them, unless they further believe that Gale, or those holding under him, had peaceable possession of the land in dispute prior to the possession of the plaintiff."·

*1879
Special Term.*

*Moore
v.
Douglass et al.*

To which refusal to give the instructions asked for and giving those which the court did, the defendants tendered a bill of exceptions, which was refused, and this exception was signed, sealed, and saved to them in lieu of the one tendered by them as aforesaid and ordered to be made a part of the record, which was accordingly done.

From the said judgment of the said circuit court of the county of Wood the defendants appealed to this Court under the provisions of the Code of 1868.

The counsel for the defendants, (appellants) filed and relied upon in argument the following as errors in said judgment, for which it should be reversed :

"1st. The court erred in not quashing the warrant on the ground that it did not sufficiently describe the premises.

"2d. The court erred in refusing to give the fifth instruction prayed for by the defendants.

"3d. The court erred in refusing to give the sixth instruction prayed for by the defendants.

4th. The court erred in giving the instructions number one and two, after refusing those asked for by the defendants.

"5th. The court erred in not sustaining the motion for a new trial."

I will now consider these assignments of error consecutively.

*As to the appellants' first assignment of error :* This is an old case. A branch of it was some years ago before this Court on *mandamus* in the case of *Douglass and Woodward* v. *Loomis Judge, &c.,* 5 W. Va. 542. The case, as we have seen, was commenced before a justice in the county of Wood on the 28th day of September, 1867, under the act of the Legislature of 1864, p. 13. The first section of this act provides that if any forcible or unlawful entry be made upon lands, or if, when the entry is lawful and peaceable, the tenant shall detain the possession of land after his right has expired without

the consent of him who is entitled to the possession, the party so turned out of possession, no matter what right or title he had thereto, or the party against whom such possession is unlawfully detained, may commence suit to obtain possession of the premises within two years after the cause of action accrues, before a justice of the township in which the premises or any part thereof is situated. And the second section of the act provides, that the plaintiff shall, in such cases file his complaint in writing with the justice, describing the premises with reasonable certainty, and stating by whom the possession thereof is unlawfully held, &c. And the third section provides that the justice shall thereupon issue a summons directed to a constable of the township, or some person specially deputed by the justice to serve it, commanding him to summon the defendant to appear before the said justice, at a place and time therein specified, to answer the action of the plaintiff for unlawfully holding possession of the premises (describing them) against the consent of the plaintiff, and stating the amount of damages, if any, claimed by the plaintiff for the detention. The place at which the defendants are to appear must be within the township, and the time must not be less than three nor more than ten days from the delivering of the summons to the officer to be served.

In this action under said statute I think it is competent for the court, upon motion to quash the warrant or summons, issued by the justice for insufficient description of the land, to look to the complaint in writing required to be filed with the justice by the plaintiff in aid of the description thereof contained in the warrant or summons, and if taking and considering the two in connection they describe the land with reasonable certainty, the summons or warrant ought not to be quashed, although the warrant or summons itself does not describe the land with reasonable certainty. _Kincheloe_ v. _Tracewell_, 11 Gratt. 600. Opinion of court by Judge Lee.

This being true, the question presents itself first: Does

the summons issued by the justice describe the land with reasonable certainty? The description contained in the summons is: "A tract of land on Twin Lick run, a branch of the White Oak Fork of Walker's creek, part of lot number twenty-four as laid down and designated on Farrow's plat of the property of J. J. Jackson, Jr., Jas. M. Jackson, William H. Small and Ezekiel Mount." The warrant neither states the township nor county in which the land, or any part thereof, is situated, nor the quantity thereof. The complaint however as to description is: a tract of land "situate in Walker township in said county of Wood, on Twin Lick run, a branch of the White Oak Fork of Walker's creek, containing one half acre, more or less, being a part of the lot of land which, by deed bearing date the 26th day of November, 1866, was leased by J. J. Jackson, Jr., James M. Jackson, W. H. Small and Ezekiel Mount, and thus described, being part of lot number twenty-four, as laid down and designated on Farrow's plat of the property of said Jacksons, Small and Mount." It is not necessary to state the quantity of acres of land either in the complaint or summons, if the land is otherwise described with reasonable certainty; but I apprehend that if the summons or complaint contained no other description of the land claimed in the action than the quantity of acres, the township, and county, in which it is situate, the description would not be sufficient; it could not be said that the land was described in such case with reasonable certainty. I apprehend the land may be described with reasonable certainty without giving its metes and bounds.

In the case of *Hawley* v. *Twyman*, 24 Gratt. 516, which was an action of ejectment, the declaration described the land demanded as being bounded by certain roads, describing them, and by the lands of certain named persons, and as containing nineteen acres and eight poles; and this description was held to be sufficiently certain. Judge Staples in delivering the opinion of the court in that case says at page 519: "The statute merely requires

that the premises shall be described with convenient certainty, so that from such description possession may be delivered. The description here is plainly sufficient for that purpose. It points out the locality of the tract by reference to the lands of co-terminus owners and the public highways passing it; a form of description equally satisfactory and certain as a statement of the metes and bounds ordinarily contained in deeds of conveyance."

A description that points out the locality of the land claimed to be withheld, is sufficient to meet the requirements of the statute, provided such description locates the land claimed to be withheld, not with absolute certainty, but with reasonable certainty.

In the case of *Hitchcox* v. *Rawson*, 14 Gratt. 526, according to the syllabus, it was held that "a declaration in ejectment, which describes the land as part of a larger tract owned by plaintiff, near certain creeks which have no public notoriety, is defective and may be demurred to." In that case Judge Lee in delivering the opinion of the court, at pages 537 and 538, says: "The declaration alleges that the plaintiff was possessed in fee-simple of a tract of land containing eleven hundred acres more or less, of which it gives the boundaries. It then alleges that the defendant entered into the said premises and unlawfully withheld from him (the plaintiff) the possession of two hundred acres in and adjacent to the waters of Hughes and Burnell's runs, being a portion of the tract of eleven hundred acres. Our act, Code, ch. 135, §8, requires that in ejectment the premises claimed shall be described in the declaration with convenient certainty, so that from such description possession thereof may be delivered. Now in this declaration I think there is clearly a want of that convenient certainty. Supposing that it is meant that the defendant entered into the part only, the two hundred acres of which he is alleged to withhold the possession (although it would seem that the entry was into the whole tract) yet the portion so withheld is not described with sufficient precision. It is 'two hundred

acres' and it is 'in and adjacent to the waters of the two runs named. But that there are runs known by those names is only inferentially alleged, and if there be such streams within the boundaries of the eleven hundred acres, it must still be left in doubt of what land 'in and adjacent to' their waters, possession is to be delivered in case of judgment for the plaintiff. I think therefore the description lacks sufficient certainty and precision, and that if a demurrer to the declaration, had been put in it should have been sustained. There was however no demurrer, and the defect might have been cured by a verdict which did ascertain the subject with proper certainty and precision. *Beverly* v. *Fogg,* 1 Call 421; *Lovell* v. *Arnold,* 2 Munf. 167; *Bolling* v. *Mayor of Petersburg,* 3 Rand. 563. But the verdict found is obnoxious to precisely the same objection that applies to the declaration."

In the case at bar the description of the land alleged in the summons and complaint taken together is simply, that the land entered upon and withheld is one-half acre more or less in Walker township in Wood county, on Twin Lick run, a branch of White Oak Fork of Walker's creek, being a part of the lot of land which, by deed bearing date the 26th of November, 1866, was leased by J. J. Jackson, Jr., James M. Jackson, W. H. Small, and Ezekiel Mount to the plaintiff and being part of lot number twenty-four as laid down on Farrow's plat of the property of said Jacksons, Small and Mount. Can it be ascertained with any certainty from this description on which side of Twin Lick run the land lies, which is withheld, or what land on said run is withheld by the defendants? Does the statement that it is a part of the lot of land which by deed dated the 26th day of November, 1866, was leased by J. J. Jackson, Jr., and others to the plaintiff, describe the land so entered upon and withheld with any reasonable certainty? Does not the enquiry suggest itself to the mind at once, what part of said land so leased? Is it in the middle or on the side, and which

side of the land so leased ? Does the description " being a part of lot number twenty-four, as laid down and designated on Farrow's plat of the property of said Jacksons, Small and Mount" locate the land so entered upon and withheld. Again it may well be asked : What part of said lot number twenty-four? And if it be replied, to a half acre, more or less, situate on said Twin Lick run, it must be admitted that this does not locate the land with reasonable certainty.   But taking the whole of said description together and bringing each part in aid of the other, it seems to me clearly that the description fails to locate the land with reasonable certainty within the meaning of the statute.   At the same time I must say that I think a slight addition to the description given would have been sufficient.

But it is argued by the counsel for the appellee, that if the description given be in fact not sufficient, still the motion was made too late, and that the defendant should be taken to have waived every existing insufficiency of description of the premises under the circumstances appearing in this case.   In their answer made before the justice the defendants in addition to pleading not guilty further pleaded that they were, at the time of the alledged trespass, in possession of the premises described in the complaint, and were the true and lawful owners thereof, and entitled to the property thereof, and that 'the plaintiff was a trespasser upon the premises and by reason thereof he was indebted to the defendants in $100.00. The defendants took no exceptions whatever to the summons before the justice.   And, as can be seen, at the first term of the circuit court after the appeal was taken, to-wit, on the 14th day of December, 1867, the parties appeared in court, by their attorneys, and no exceptions appear to have been taken by the defendants to the sufficiency of the summons, and by *consent of the parties* it was ordered by the court that the surveyor of said county should go upon the *land in controversy in the warrant and proceedings mentioned and survey and lay out the same as either*

1879
Special Term.

Moore
v.
Douglass *et al.*

Syllabus 1.

*1879*
Special Term.

Moore
v.
Douglass *et al.*

*party should require, and return four plats and reports thereof to the court, and the cause* was continued, &c. Again, on the 13th day of April, 1869, the parties again appeared in court, and on their motion the court again ordered that the surveyor of the county should go on the land in controversy at such time as the parties should appoint, and survey and lay out the same as either party should require, and return five fair plats and reports to the court, &c. On the 27th day of September, 1869, the parties again appeared, and the cause was continued by consent, and the parties agreed that any additional surveying either party desired should be done under the former order of survey. After all this and, as is manifest by the record, after the surveyor had returned at least two plats and reports under and in obedience to said consent orders, fixing beyond question the exact locality of the land in controversy, and nearly three years after the commencement of the action, and also after a large amount of costs by the consent and at the instance of the defendants had been incurred in making surveys and reports and plats for the purpose of locating with precision the land in controversy, on the 14th day of December, 1870, the parties by their attorneys appeared in court, and the defendants for the first time, without even withdrawing, or asking leave to withdraw their said answer and pleas filed before the justice, moved the court to quash the "warrant" or summons in the cause, because it did not fully describe the premises; and the court overruled the motion.

It may well be said, that the act of the Legislature did not require that a minute description of the premises demanded should be made by metes and bounds in either the warrant or complaint. As we have seen, the act only required that the premises should be described with reasonable certainty; and to do this, it was not necessary that a minute description of the premises should be given by metes and bounds. But waiving this, I think it should be taken and held in this case under the

circumstances appearing, that the defendants by their action and consent, &c., waived any defect existing in the summons for insufficiency of description, which could be supplied by the verdict of the jury at the trial. A party may by his acts and agreements waive a demurrer. See *Brodie* v. *Clator*, 8 W. Va. 599; *Read* v. *Gardner*, 9 Gratt. 89. An action of unlawful entry and detainer, as allowed by said statute, was given as a summary, and speedy remedy for redress in the cause specified in the first section of the statute. And it seems to me me that to have allowed and sustained the said motion to quash under the circumstances appearing in this cause would have been a great departure from the purposes of the statute and a mockery of justice.

For the foregoing reasons I am of opinion the court did not err in overruling said motion to quash. But I do not mean to determine here whether the court was authorized under the law to allow the plaintiff to amend his summons in the cause, or whether a defendant can generally at any term of the court, after he has pleaded in bar, as in this case, move the court as a matter of right to quash the summons for insufficiency, or whether a defendant in a case of ejectment may at any term of the court after having pleaded not guilty demur as a matter of right to the declaration. I only mean now to determine that under the peculiar circumstances of this case the court did not err in overruling the motion to quash, for the reasons above stated.

The case of *The Supervisors* v. *Ellison*, 8th W. Va., 308, is unlike this in material respects. In that case no answer or plea was filed before the justice or in court to the action, and there were no consent orders of survey made to ascertain the location of the premises; and the only motion ever made by the defendants, after the case was taken to the circuit court by an appeal, was a motion to dismiss the summons, which was overruled. And also in that case the appeal was taken on the 10th day of April, 1871, and the cause tried and determined in the

1879
Special Term.

Moore
v.
Douglass *et al.*

circuit court on the 20th day of July, 1871. The cases differ in other material respects which I deem unnecessary to mention here as a full statement of this case hereinbefore appears.

*As to the second assignment of errors assigned as aforesaid:* This instruction uses the word "lessee" of the plaintiff and "lessees" of the plaintiff. I do not understand from any part of the bill of the exceptions that there was any evidence given to the jury, tending to prove that the the plaintiff had any "lessee" or "lessees." It does appear that the plaintiff had lessors. On examining the instruction as contained in the printed record I supposed that the words "lessee" and "lessees," as employed in said instruction nmmber five, was a mistake in printing the record; but on examination of the manuscript record, I find that the record as printed is in this respect a correct copy of the manuscript record in the cause. But what perhaps is more serious and fatal to the instruction is, that I do not find that there was any evidence given in the cause tending to prove, or proving, "that the line designated, &c., on the plat of surveyor Farrow from the 'locust' to letter "M" was the line formerly known and regarded as the "Fox and Sims" line on survey number twenty-seven, and that the line from letter "G" to letter "N" on said plat, was on the 24th day of November, 1865, the date of the deed from Walter Keeler to the lessors of the plaintiff then known as the "Fox and Sims" line, or that there has since been established, as the true "Fox and Sims" line, any line on the north-west side and terminating in the line from the "locust" N. 45° E." On the contrary thereof it is expressly stated in the bill of exceptions, that the plaintiff gave evidence tending to show that the red dotted line on the plat of surveyor Farrow made in the cause, running from letter "A" to letter "G" and thence to letter "N," was what was formerly known and regarded as the "Fox and Sims" line, and that the line on said plat, running from letter "F" to the "locust" and thence to the letter "M,"

was what is since known and regarded as the true "Fox and Sims" line on survey number twenty-seven; and it does not appear that the defendants gave evidence tending to prove the contrary. This part of said instruction is so contrary to what any evidence given to the jury tended to prove, so far as appears by these bills of exceptions "X, Y," or any other that we can consider upon this appeal, as to justify the court in refusing to give it as prayed, upon the ground of irrelevancy and that it tended to confuse and mislead the jury instead of to aid and enlighten them.

1879 Special Term.

Moore v. Douglass et al.

An instruction should be pertinent; and there should generally be evidence in the cause tending to prove the case the instruction supposes to exist, otherwise the instruction should be rejected, as tending to confuse and mislead the jury as well as for not being pertinent. And if the evidence tends to prove one state of facts and the instruction asked supposes and is predicated upon an opposite state of facts the existence of which there is no evidence tending to prove, it is not generally error for the court to refuse the instruction, for the same reasons.

Syllabus 3.

Syllabus 4.

But if the first part of said instruction and the conclusion of said first part were correctly stated and propounded, still, it seems to me, the last clause of it should not have been given by the court in this case, because it was so framed as that it was calculated to mislead the jury, and does not, as I think, propound the law correctly as applicable to this case.

The remedy for an unlawful or forcible entry was designed to protect the actual possession, whether rightful or wrongful, against unlawful invasion, and to afford summary redress and restitution. The entry of the owner is unlawful, if forcible; and the entry of any other person is unlawful, whether forcible or not. If the defendant enter unlawfully, the plaintiff is entitled to recover, without any regard to the question of his right of possession. His actual possession of itself gives him a right of possession against any person not having a right

of entry.    Any possession is a legal possession against **a**
wrong-doer.    Proof of an actual and exclusive possession
by the plaintiff, even if it be by wrong, is sufficient to sus-
tain the action of trespass against a mere stranger or
wrong-doer, who has neither title to the possession him-
self nor authority from the legal owner.    *Olinger* v.
*Shepherd,* 12 Gratt. 471; 2 Greenleaf Ev. §618.

Syllabus 5.      The nature of the possession, to which this summary
remedy applies, is not confined to a possession by
actual occupancy or enclosure; it applies to any posses-

Syllabus 6.
sion which is sufficient to sustain an action of trespass.
Title draws after it possession of property not in the

Syllabus 7.    adverse possession of another.    Actual possession of a
part of a tract of land, under a *bona fide* claim and
color of title to the whole, is possession of the whole, or
so much thereof as is not in the actual possession of
others.    This is the general principle and it applies to
the remedy in question.    It has been decided in Ken-

Syllabus 8.    tucky that actual residence on one part of a tract, claim-
ing the whole, is a possession of the unenclosed part
within the meaning of the act against forcible entries.
*Vanherne* v. *Tilley,* 1 Mon., 50; *Olinger* v. *Shepherd,*
12 Gratt. 473.

In the case at bar the evidence tends to prove, and
there seems to be no question or doubt as to the fact, that
the said lease from John J. Jackson, Jr., and others to
the plaintiff does embrace the land embraced within the
the green lines on said Farrow's plat, which is the
land in controversy, and that he entered upon a part
of the land embraced by his said lease, and took
actual possession of such part outside of the land in
controversy, and continued to hold and did hold and
actually occupy such part up to and at the time the de-
fendants entered upon the land in controversy.    And it
further appears substantially that evidence was given to
the jury tending to prove, that when the defendant took
actual possession of said part of the land embraced with-
in his lease outside of the land in controversy, he claim-

ed, when he so took possession thereof, and continuously afterwards until and at the time of the entry by the defendants on the land in controversy, the whole of the land embraced in his said lease, which includes the land in controversy; and that he continued in the quiet and peaceable possession of said lot, number twenty-four, from the time he so entered upon it until the time the defendants entered upon that part of the same in controversy in this suit.

Although the plaintiff has not shown the legal title to the whole or any part of the land embraced in his said lease, which embraces the land in controversy, and although the plaintiff may not have been in the actual possession of the land in controversy or any part thereof (about which there is controversy and perhaps conflict of evidence) prior to or at the time the defendants entered thereon, still under the circumstances above stated, if true, the plaintiff had a sufficient possession of the land in controversy to entitle him to this summary remedy against the defendants, if wrong-doers not having the right of entry. If the legal title to the land in controversy was vested in Gale and wife, and these defendants entered thereon without force, under authority claimed from Gale and wife, and thus deprived the plaintiff of his possession thereof, then such entry would have been lawful, and the plaintiff could not maintain action against the defendants; but this involved in this case questions of fact which were for the jury to determine, and not for the court. If therefore the court had given the last clause of said instruction to the jury, even though the plaintiff was not vested with the legal title to any part of the land embraced in his said lease, or in controversy, it would have been erroneous.

The instruction as prayed, if given by the court under the circumstances, would in effect have amounted to instructing the jury, that unless the plaintiff was in actual possession of the land in controversy at the time the defendants entered thereon, such entry of the defendants

Syllabus 9.

was lawful as against the plaintiff, even though they did not have the legal right to enter upon the same. Or if it is not susceptible of this construction, it must amount to an instruction that the legal title to the land in controversy was in Gale and wife, and that they being the owners, had the right to enter upon the land in controversy, if the plaintiff was not at the time of such entry in the actual possession thereof, and that defendants had authority to enter upon the land in controversy from Gale and wife, and having such authority, they had the right to enter thereon, unless the defendant was at the time of such entry in the actual possession of the land in controversy. Under this construction the instruction was erroneous because the court in giving it would have clearly encroached upon the functions of the jury as to matters of fact involved therein.

*As to the third assignment of error, assigned as aforesaid :* This instruction is so framed that it is exceedingly difficult to understand what it means, and it is well calculated to confuse and mislead, as the case appears before us, and I presume that this instruction was in fact drawn and submitted to the court to be given upon a supposed state of facts or evidence which does not now appear by the record as the case was before the jury. I do not see after carefully inspecting this instruction, that the court erred in refusing to give it to the jury.

*As to the said fourth assignment of error :* In this case the plaintiff and defendants seem to claim the land in controversy under the same remote title ; and neither the plaintiff nor the defendants have gone farther back than the common source, to—wit, Walter Keeler, and in such case it is perhaps unnecessary to go farther back in the chain of title. Tucker's Commentaries, under the head of ejectment, page 173.

The first instruction given by the court at the instance of the plaintiff, although not worded as I would prefer, still I do not see any legal or valid objection to it when applied to this case. In the case of *Olinger* v. *Shepherd,*

12 Gratt. 471, it was held, that "In a proceeding of unlawful entry or detainer, if the defendant has entered unlawfully, the plaintiff is entitled to recover without any regard to the question of his right of possession; and this, though the land· from which he is ousted is the land of the commonwealth, or of the party who ousted him." As we have seen, an entry upon the possession of another may be unlawful as to a wrong–doer, and not unlawful as to the owner or those acting under his authority; but it may be unlawful as to both. Of course if the entry upon the possession of another is forcible, it is unlawful even as to the owner of the property".

The second instruction I do not think contains any thing that could possibly have prejudiced the defendants. The first clause of the instruction, it seems to me, propounds the law properly in this case, and though the last clause of this instruction is not well worded and perhaps in consequence thereof does not convey the idea or point intended distinctly, yet it seems to me that taking every possible construction or view of it, if it is in any respect erroneous, the error is against the appellee and not the appellants. Upon the whole, taking the two instructions given together, and so considering them, it seems to me and I am of opinion that neither of said instructions as applied to this case, as it appears by the record, is erroneous to the prejudice of the defendants.

*As to the fifth assignment of error aforesaid;* Neither all the facts proven nor evidence given to the jury have been certified to by the circuit court. We must therefore presume that the verdict of the jury was authorized by the evidence. Whatever defect there was in the original summons in the description of the premises withheld is cured by the verdict, the verdict ascertaining the said premises with proper certainty. No question has been argued before us as to the insufficiency of the verdict in form or description of the premises withheld. I have now considered all errors assigned in this cause and disposed of them; and I have not detected any errors in the record prejudicial to the defendants.

For the foregoing reasons there is no error in the judgment of the circuit court of the county of Wood, rendered in this cause on the 30th day of December, 1870, and the same must therefore be affirmed, with $30.00 damages and the costs in this Court in favor of the appellee, George H. Moore, against the appellants, William Douglass and S. Woodward.

JUDGES MOORE AND GREEN CONCURRED.

JUDGMENT AFFIRMED.