COOPER *v.* COOK.

4-9732                                                    247 S. W. 2d 957

Opinion delivered April 7, 1952.

Rehearing denied May 5, 1952.

*J. V. Spencer* and *J. V. Spencer, Jr.,* for appellant.

*Aurelle Burnside* and *T. O. Abbott,* for appellee.

MINOR W. MILLWEE, Justice. This is a suit by appellees, as the heirs of Raif Ford, deceased, against appellants, J. E. Cooper and wife, to quiet title to eighty acres of land in Union County, Arkansas.

At the time of his death intestate in 1928, Raif Ford was the owner and in possession of two hundred acres described as the NE Quarter, and the SE Quarter of the NW Quarter of Section 36, Township 19 South, Range 14 West, in Union County. The eighty acres in controversy is the West Half of said NE Quarter. Raif Ford's home was located in the northwest corner of the eighty-acre tract facing east on the El Dorado-Farmerville road which runs north and south through the tract.

Upon the death of Raif Ford in 1928, appellee Spence Ford, one of his six sons, moved in the Raif Ford home where he has since resided. Joe Ford, another son, moved in a house south of the Spence Ford home and on the same side of the road in 1928 where he resided with his family until his death in 1937, and his widow and children continued to live there until 1946. In 1929 appellee Greeley Cook, grandson of Raif Ford, built a house on the east side of the road, south of the Spence Ford home, where he resided with his family until about 1946 when he rented the house to a tenant and moved to El Dorado. This house burned in 1950 while occupied by Cook's tenant.

On March 7, 1935, O. B. Clark, as administrator of the Raif Ford estate, sold the eighty acres in controversy to pay debts of the estate. Rush Hooten purchased the land at the administrator's sale and a deed was executed to him on April 18, 1935. The administrator's report of

said sale was approved by the probate court on April 23, 1936, and the deed placed of record May 27, 1936. Hooten and wife executed a quitclaim deed to the eighty-acre tract to appellant, J. E. Cooper, on November 19, 1946. Neither Hooten nor Cooper asserted any right of possession or claim of ownership of the lands until 1947. Spence Ford paid taxes on the entire two hundred acres from 1928 until 1947. When he went to pay taxes in 1947 he learned that appellant had already paid the 1946 taxes on the eighty acres in controversy and this was the first knowledge appellees had of the administration proceedings or any claim of title to the lands by Hooten or Cooper.

Although appellees pleaded laches on the part of Hooten and the invalidity of the administrator's sale of the lands to him, their proof was confined to their principal claim of title to the eighty-acre tract by adverse possession. The chancellor sustained the plea of adverse possession and this appeal is from the decree quieting appellees' title to the tract and cancelling the administrator's deed to Hooten and the latter's quitclaim deed to appellant J. E. Cooper.

In urging a reversal, appellants apparently concede that appellees fully established their claim of adverse possession to the Raif Ford house occupied by Spence Ford and several acres of yard, garden and pasture in the immediate vicinity. However, it is insisted that appellees had no color of title to the lands after the administrator's sale and deed to Hooten in 1935; that the evidence is insufficient to establish pedal possession by appellees for the statutory period of any of the balance of the eighty acres in controversy; and that title to these lands should have been quieted in appellants.

Appellants rely on the case of *Sturgis* v. *Hughes*, 206 Ark. 946, 178 S. W. 2d 236, which involved a claim of adverse possession by a grantor against a grantee and his successors in title. We held that the record title was in those claiming under the grantee and that since the grantor was without color of title, he acquired title to

only that portion of the land which he actually occupied for more than seven years. We agree that this rule is applicable here. Title to the eighty acres in controversy became vested in appellees on the death of Raif Ford in 1928. However, the lands were an asset in the hands of the administrator for the payment of debts of the Raif Ford estate and title of the heirs was divested by the administrator's sale and deed to Hooten in 1935. One cannot successfully claim possession under color of title where he has been deprived of the color of title relied upon by a judgment, decree or involuntary sale of the land under authority of law. 2 C. J. S., Adverse Possession, § 69; 1 Am. Jur., Adverse Possession, § 204.1. The validity of the administrator's deed to Hooten has not been challenged here.

It follows that appellees' continuous possession of the lands after the administrator's sale was without color of title, which was in Hooten under his deed from the administrator. It is well settled by our decisions that while color of title is not necessary to give title by adverse possession, it is required to extend an actual possession of a part of a tract of land constructively over the rest of it. *Bradbury* v. *Dumond,* 80 Ark. 82, 96 S. W. 390, 11 L. R. A., N. S. 772; *Culver* v. *Gillian,* 160 Ark. 397, 254 S. W. 681. Thus the adverse possession of appellees in the case at bar is limited to the land they actually occupied.

In *Culver* v. *Gillian, supra,* the court held that to constitute adverse possession in one having no color of title, there need not be a fence or building, yet there must be such visible and notorious acts of ownership exercised on the premises continuously for the time limited by law that the owner of the paper title would have knowledge of the fact, or that his knowledge may be presumed as a fact. The rule of actual possession is to be applied reasonably in view of the location and character of the land claimed and it is ordinarily sufficient if the acts of ownership are of such a nature as a claimant would exercise over his own property and would not exercise over an-

other's, and that the acts amount to such dominion over the land as it is reasonably adapted to. What is adverse possession is one thing in a populous country or a city and another thing in a sparsely settled section of the country. 2 C. J., Adverse Possession, § 7 (b) ; 2 C. J. S., Adverse Possession, §§ 22 and 181 b.

The lands in question are located in a sparsely settled section of Union County. Although appellees are not well versed in land lines and descriptions, the effect of their testimony is that Spence Ford, Greeley Cook, •Joe Ford and his widow and children continuously resided on the eighty acres in controversy, cultivated parts of it, cut and sold timber from the balance and exercised complete dominion over the lands for more than seven years after the execution of the administrator's deed to Hooten in 1935. Spence Ford testified that he cultivated lands south of his house in the northeast quarter of section 36 every year following the death of his father until a year before the trial when he developed heart trouble; that he had twelve or fourteen acres in corn and other crops near his house each year in addition to a fenced pasture of about four acres across the road from his house. Joe Ford lived on the same side of the road on the south forty and Greeley Cook constructed a house across the road from Joe Ford in 1929.

Greeley Cook testified that in 1929 he cleared and fenced eighteen acres which he cultivated each year until he left the place in 1946 and rented to another; that he made a living on the land and had thirty-six head of cattle when he left; and that he made crossties on the place.

In 1938 four of the Raif Ford heirs executed a mineral deed covering the lands in controversy. About 1940 the heirs filed suit against J. W. Reynolds for cutting timber on the tract. In 1945 they sold $3,000 worth of timber from this and adjoining lands of the estate. Cotton allotments were made by the federal government to Spence Ford, Joe Ford and Greeley Cook for several years after 1935, which apparently covered the entire

two hundred acres. Appellees at all times since the death of Raif Ford have claimed title to the lands and their claim has been so recognized by others living in the vicinity. Their testimony as to occupancy and cultivation was corroborated by other witnesses in their behalf.

Appellants introduced only one witness. He had made an inspection of the property a few days before the trial and introduced a plat of the eighty acres showing the location of the road, the fenced pasture across the road from the house occupied by Spence Ford and a small acreage around the house which he stated was the only land in cultivation at that time. He stated that there were small pine bushes growing on the lands and that a strip of timber had been cut a few years previously on the west side of the eighty-acre tract. He also stated there was a field of about ten or twelve acres which appeared to have been in cultivation until three or four years previously on the eighty acres and that there was a fence on the line between the south forty and SE Quarter of the NW Quarter. The plat introduced by this witness tends to clarify the testimony of witnesses for appellees as to the location of the houses occupied by Joe Ford and Greeley Cook and to show that said houses were located on the south forty of the eighty acres in controversy. His testimony also corroborates to some extent appellees' testimony as to the prior cultivation and timber cutting on the lands.

Appellants say the testimony of appellees is too indefinite to show actual possession of the entire eighty acres and complain that their repeated references to occupancy, cultivation and timber cutting as being ''on the land'' and ''of the land'' could have been made with reference to the other 120 acres owned by them and contiguous to the eighty acres in dispute. This is true in some instances while in others it is clear that such statements had reference to the lands in controversy only. We think the evidence, which for the most part is undisputed, is sufficient to support the chancellor's finding of actual adverse possession of the eighty acres by appellees

for more than seven years following execution of the administrator's deed to Hooten in 1935. The facts here are unlike those in such cases as *Brown* v. *Bocquin,* 57 Ark. 97, 20 S. W. 813; *Boynton* v. *Ashabranner,* 75 Ark. 415, 88 S. W. 566, 1011, 91 S. W. 20; and *Culver* v. *Gillian, supra,* where there were only fitful acts of ownership unaccompanied by actual occupancy of the lands in dispute. Here we have continuous residence upon parts of the land and such use and dominion over the balance as it was reasonably adapted to, and that a lawful owner might make, for more than seven successive years after the deed to Hooten.

Affirmed.