PINKERT *v.* WILLIAMSON.

5-833                                                287 S. W. 2d 8

Opinion delivered January 16, 1956.

[Opinion on rehearing delivered March 5, 1956.]

*Frank H. Cox,* for appellant.

*Alonzo D. Camp,* for appellee.

SAM ROBINSON, Associate Justice. This action was filed by appellee, George M. Williamson, December 15, 1954 to clear the title to certain property; there was a decree in his favor; the issue is whether appellee has acquired title by adverse possession; the facts are stipulated. Appellee's father purchased the property, the South Half of Lot 3 and the North 25 Feet of Lot 4, Block 9, Capitol View Addition to the City of Little Rock, in 1918. The property was forfeited to the State by the non-payment of taxes for the year 1932. On July 31, 1937, appellee's father and mother purchased the property from the State and received a deed to it. Appellee's father paid the general taxes on the property until his death in July 1946 and appellee's mother continued to pay the taxes until her death in 1954. Upon the death

of appellee's mother in 1954, he became the absolute owner of whatever title his father and mother had as tenants by the entirety. He and his predecessors in title have paid the general taxes on the property continuously since July 1937 to the time this suit was filed. It is further stipulated that since July 1937 the property has been unenclosed and unimproved within the meaning of Ark. Stats. Sec. 37-103.

The property is within the boundaries of Sewer Improvement District No. 94 of the City of Little Rock and the assessments due for the years 1931, 1932, 1933 and 1934 were not paid. On July 18, 1935, the District filed suit to foreclose its lien; on November 23, 1937, a decree was entered in favor of the District against appellee's father, as owner of the property, for delinquent assessments for 1931, 1932, 1933 and 1934. The judgment was not paid and on the 16th day of March, 1938, the duly appointed commissioner sold the property to the District; the sale was approved on the 12th of April, 1938. On the 12th of October, 1943, after the expiration of five years, H. S. Nixon, Commissioner in Chancery, executed a deed to W. I. Stout, Trustee; and, on the 26th day of May, 1944, Stout executed a quitclaim deed to the appellant herein, Ed Pinkert. On January 16, 1950, Pinkert filed an action in the Pulaski Chancery Court seeking to quiet his title. A decree was taken quieting the title as against Lee Williamson, a stranger to the title; but that case in no way affected appellee's title as neither he nor his predecessors in title were parties to that suit.

It will be recalled that appellee's predecessors in title purchased this property from the State in 1937; and by that deed they acquired color of title. The Improvement District had filed suit in 1935 to foreclose its lien for unpaid assessments for previous years and the decree foreclosing such lien was taken in 1937. Assuming that the Williamsons lost title to the property by reason of the foreclosure decree in favor of the Improvement District, the question that follows is: Was their color of title, which they had by reason of the 1937 deed from the State, destroyed? Although the decree foreclosing

in favor of the Improvement District for the unpaid assessments may have destroyed the title which the Williamsons obtained from the State, it did not destroy their color of title. There was no court order touching upon the deed the Williamsons had obtained from the State in 1937; that deed was not in issue in the foreclosure proceedings; no order was made by the Court with reference to it at all. .

In *Moore* v. *Morris,* 118 Ark. 516, 177 S. W. 6, certain land had been patented by the State of Arkansas to P. K. Lester and T. J. Melton in 1856. Later, the property was acquired by one DeMoss by adverse possession. Still later, the heirs of Lester again came into possession of the land. The question was whether the original deed to their ancestor was sufficient to constitute color of title and thus support their claim of adverse possession. The Court said:

"It may be conceded (without so deciding) that appellees (those holding under DeMoss) have made sufficient showing to establish title in their ancester by adverse possession under color of title; nevertheless, the testimony shows very clearly that appellant (who holds under Lester) is entitled to have a decree quieting his title and declaring his right of possession.  *  *  * Even if DeMoss or his heirs acquired title by adverse possession, that title was reacquired by the original owners, the Lester heirs, by payment of taxes under color of title under the Act of March 18, 1899. The undisputed evidence is that Lester and his heirs paid taxes on the land continuously up to the time it was sold to appellant. Their paper title, which constituted absolute title up to the time the ownership was wrested from them, if at all, by the adverse occupancy of DeMoss, continued thereafter at least as color of title, and the payment of taxes while the land was in a wild state and unoccupied restored the title to them by adverse possession according to the terms of the statute."

In *Brandon* v. *Parker,* 124 Ark. 379, 187 S. W. 312, the Court said:

"We think the controlling point here, as it was in the case of *Moore* v. *Morris, supra,* is that the color of title as such was not cancelled. The owner in the case cited lost his title, but his deed, not having been cancelled by any order or judgment of court, remained as color of title and entitled him to the benefit of the provisions of Section 5057 of Kirby's Digest [Ark. Stats. Sec. 37-102], upon complying with its terms."

"In the case of *Moore* v. *Morris,* the title to the land In *Inman* v. *Quirey,* 128 Ark. 605, 194 S. W. 858, it is said: was wrested from the holders of the record title by adverse possession for seven years. The court held that notwithstanding this fact, the record title continued in existence and remained as color of title so that the holder of the record title could reacquire title to the lands by payment of taxes for seven years under section 5057 of Kirby's Digest, the lands being wild and unoccupied lands. This rule was extended in *Brandon* v. *Parker.* There a person held lands under a donation deed and another person entered in possession of them within two years and acquired title by adverse possession. It was held that the donation deed of the first owner, although the lands were forfeited to the State under a void tax sale, remained as color of title so that the holder of it could acquire title by adverse possession for two years under Section 5061 of Kirby's Digest. The effect of the holding in those two cases was that although the first owner lost his title by the fact that another had acquired title by adverse possession, his deed or paper title not having been canceled by any order or judgment of the court, remained as color of title."

The Williamsons' deed from the State has not been cancelled by any order or judgment of the Court. It therefore constitutes color of title and although the Improvement District may have acquired the legal title to the property by the foreclosure in 1937, the Williamsons have paid the taxes on unimproved and unenclosed land under color of title since 1943 when the Commissioner in Chancery deeded the property to W. I. Stout, Pinkert's

predecessor in title. Williamson has therefore acquired title by adverse possession in accordance with Ark. Stat. § 37-102.

The decree is affirmed.

Justices MILLWEE and GEORGE ROSE SMITH dissent.

---

## SUPPLEMENTAL OPINION ON REHEARING

SAM ROBINSON, Associate Justice. On rehearing, appellant insists that when appellee's father obtained his deed from the State in 1937 he was, in effect, redeeming the land from a forfeiture for the non-payment of taxes; that a purchase of tax-forfeited land from the State by one who owned the land at the time of its forfeiture amounts to a redemption. This would be true in some circumstances, such as where there is a remainderman, but that situation does not exist here. Moreover, the father of the appellee was not the only purchaser from the State; appellee's mother was also a grantee, the result being an estate by the entirety. Prior to the purchase from the State, the mother had owned no interest in the land, but she acquired an interest in the 1937 deed from the State. Through the death of her husband, her estate by the entirety ripened into sole ownership, subject, of course, to any intervening divestiture.

In a similar situation, in the case of *Shepherd* v. *Cox*, 191 Miss. 715, 4 So. 2d 217, 136 A. L. R. 1346, the Supreme Court of Mississippi held that color of title was not destroyed. In *Cooper* v. *Cook*, 220 Ark. 344, 247 S. W. 2d 957, we approved the rule that "one cannot successfully claim adverse possession under color of title where he has deprived himself of the color of title relied upon by conveyance to another, or has been deprived of the color of title relied upon by a judgment or decree." 2 C. J. S. § 69. Mrs. Williamson, from whom the appellee inherited the property, was not a party to the Improvement District's foreclosure suit, and her deed from the State was not dealt with in that case. But, nevertheless, she

may have been deprived of her title by the foreclosure decree. Still, the question remains: Was she deprived of color of title? In three cases cited in the original opinion, this court held that one does not lose color of title by reason of actually losing title to the property by the adverse possession of another. In the situation existing here, there is no more reason to say that color of title was lost than it was in those cases.

GEORGE ROSE SMITH, J., dissenting. The three cases cited by the majority hold that the original owner's record title continues to be color of title after a stranger has acquired ownership by adverse possession. Those cases are not directly in point, since it is not contended that the appellant's claim of ownership rests upon adverse possession. Pinkert's title rests instead upon an improvement district sale, which concededly destroyed the appellee's actual title to the land. Such a sale also destroys the owner's color of title, for, as we held in *Cooper* v. *Cook*, 220 Ark. 344, 247 S. W. 2d 957: "One cannot successfully claim possession under color of title where he has been deprived of the color of title relied upon by a judgment, decree or involuntary sale of the land under authority of law." I do not see how the holding in the *Cooper* case, which the majority have not attempted to distinguish, can be reconciled with today's decision.

MILLWEE, J., joins in this dissent.