WOOD *v.* McCOY (McCORVEY).

5-1462                                          311 S. W. 2d 755

Opinion delivered March 17, 1958.

[Rehearing denied April 28, 1958]

J. *Hugh Wharton* and *J. R. Wilson,* for appellant.

*Spencer & Spencer,* for appellee.

CARLETON HARRIS, Chief Justice. Appellants instituted suit in February, 1944, against appellees asserting that they were the owners of approximately 21 acres (20.97) of land in Union County, and that appellees were trespassing on their property, though claiming title under a deed obtained by them in December, 1941; that

such deed conveyed no title since the grantors were not owners of the property conveyed. Appellants prayed that appellees' deed be cancelled and set aside; that appellees be enjoined from further going upon said lands or in any way asserting control or possession; that appellants be awarded damages for timber cut and removed by appellees, and that title to the 21 acre tract be quieted in them. Appellees answered, asserting a deed from their parents, Henry McCoy (McCorvey) and Jeannie McCoy, and alleging that the said Henry and Jeannie McCoy, together with appellees, had been in open, notorious, adverse, and peaceable possession of the property since the fall of 1932, or more than 11 years. The case remained pending, and subsequently, Jeannie McCoy died.[1] After the filing of additional pleadings, the cause proceeded to trial on February 18, 1957. At the conclusion of the trial, the court dismissed the complaint of appellants and quieted and confirmed title to the 21 acres[2] in Robert McCoy, Kine McCoy, Frank McCoy, Nettie McCoy, Jimmie McCoy, and Lee McCoy as against appellants N. N. Wood, W. L. Furlow, Aubert Martin and J. R. Wilson. From such decree comes this appeal.

Appellants designate six points for reversal; however, several of these are argued together, and we do not consider that the others have any relevancy to a determination of the litigation. In rendering its opinion, the trial court stated, ''The crux of the lawsuit, as I see it, is in the question of adverse possession.'' We fully agree with the Chancellor that the determination of the litigation depends upon whether appellees had established adverse possession, and other matters argued are extraneous. The proof shows that Henry and Jeannie McCoy (McCorvey) lived on the property and claimed title from at least 1933 until the filing of the suit in 1944. A house that had originally burned down was replaced on the property in 1933.[3] According to the

---

[1] Petition for revivor was filed, and O. E. Bishop, special administrator of the estate of Jeannie McCoy, was made a party defendant.

[2] The decree actually quieted title in 80 acres, but appellants are only claiming the 21 acres.

[3] A second house was built on this 21 acres in 1944, and a plat introduced shows the houses, yard fence, and garden, located approximately in the center of the 21 acres.

testimony, appellees, their mother and father, since 1933, had farmed in both directions to the east and north . . . had a garden on the east and pasture on the west . . . the timber had been cut three or four times . . . timber had been sold . . . fire wood was cut over the place . . . some wire fences were built. The parents lived on the land until they died, and claimed ownership at all times until their death. According to Jim McCoy, "I've plowed there many a day." The parents owned cows which were pastured on the place . . . the timber was openly cut . . . a brother and sister still live on the place. Three witnesses, apparently disinterested, testified as to the possession of the McCoys (McCorveys). Daniel Lee Staples, age 63, testified that he had been familiar with the land since "I was big enough to go out there,"; that the land was known as the "Jeannie McCorvey" land, and that the McCoys (McCorveys) had lived there continuously until the present time . . . that they had cut the timber off and hauled it out . . . that he had had occasion to be around the property during the summer about once a week . . . that Jeannie McCorvey "worked for us all my life" and he would go by to see her. "He had patches and garden and raised potatoes, you know, like a farmer would. He had cows and it was just like a farm house." D. L. Staples, Jr., stated that he had been familiar with the land for approximately 25 years. When asked "Q. Who has been in possession of that land since you have known it. A. Aunt Jeannie and Uncle Henry lived on it and also Bobbie and his sisters. * * * Q. What use have they made of the land other than just living on it? A. I guess they have used it for a source of wood, heating, and gardens and patches, small rotation crops, peanuts and potatoes and things like that." Ira E. Adams, age 65, testified that he lived about half a mile from the property and had been familiar with it all his life. From the testimony: "Q. And ever since you have known this land Jeannie and Henry McCorvey have been in possession of it? A. They have. * * * Q. During all that period of time, have they claimed to be the owners

of this land? A. Yes, sir. Q. Since Jeannie and Henry's death, have the boys claimed to be the owners of it? A. Yes, sir. Q. What use have they made of the lands, Mr. Adams, other than just living there? A. Well, they farmed some around there, truck patches. * * * they have cut off a good bit of timber there and hauled it out of there. * * *"

It is true that appellants have paid the taxes on this 21 acres since 1939,[4] but, as stated by the Chancellor, the payment of taxes is only a circumstance to be considered along with other circumstances. It also appears that Henry and Jeannie McCoy (McCorvey) held no record title to the property, the record title being in appellants. While the foregoing testimony relating to appellees' control of the property is not too much in dispute, it is argued by appellants that the whole tract was not under fence, and that occupancy and acts of control were not exercised over the entire 21 acres. This same contention was raised in *Cooper* v. *Cook*, 220 Ark. 344, 247 S. W. 2d 957, a case similar in many respects to the instant cause. This Court said:

"The rule of actual possession is to be applied reasonably in view of the location and character of the land claimed and it is ordinarily sufficient if the acts of ownership are of such a nature as a claimant would exercise over his own property and would not exercise over anothers, and that the acts amount to such dominion over the land as it is reasonably adapted to. * * *

"Appellants say the testimony of appellees is too indefinite to show actual possession of the entire eighty acres and complain that their repeated references to occupancy, cultivation and timber cutting as being 'on the land' and 'of the land' could have been made with reference to the other 120 acres owned by them and contiguous to the eighty acres in dispute. This is true in some instances while in others it is clear that such

---

[4] Frank McCoy testified: "A. We paid the taxes up until I come into the office up here and the tax collector in the office told me that Mr. Wilson told him not to take no more money from me, so they wouldn't take it. I sent this boy over there in and they wouldn't take it from him."

statements had reference to the lands in controversy only. * * *

"Here we have continuous residence upon parts of the land and such use and dominion over the balance as it was reasonably adapted to, and that a lawful owner might make, for more than seven successive years after the deed to Hooten."

The final paragraph in that opinion perfectly fits the facts in this case.

Appellants further urge that certain necessary persons were not made parties to the suit, such parties allegedly holding an interest in some other portion of the 80 acres. The suit was brought by appellants, and they are only interested in the 21 acres. Be that as it may, persons claiming an interest in the lands and who were not made parties, of course, are not bound by the decree. In fact, the decree itself quiets title in appellees as against appellants.

In summary, we quote from the opinion of the trial court. "Gentlemen, as I see it I think these plaintiffs have * * * let these defendants quiet title to this by adverse possession. The proof shows they have lived there, they have cultivated it, they have sold timber, exercised control over it for long beyond the statutory period of time. As I see it, I think they * * * let them acquire title by adverse possession." We entirely agree.

Affirmed.