## CHARLESTON.

### CHILTON *v.* WHITE *et al.*

Submitted February 27, 1912.   Decided. May 27, 1913.

1. FORCIBLE ENTRY AND DETAINER—*Issue—Title.*

    In an action of unlawful entry and detainer wherein the relation of landlord and tenant does not exist, and the entry of defendant has been peaceable and under a claim of right, the right to possession depends upon the true ownership of the land.   (p. 547).

2. ADVERSE POSSESSION—*Constructive Possession—Effect.*

    Constructive possession of land does not apply in favor of a claimant thereof, against the true owner, unless such claimant has had actual adverse possession of some part of the controverted land.   (p. 548).

3. SAME—*Constructive Possession—What Constitutes.*

    Actual possession of one or more tracts of land, contiguous to another tract in controversy, under a deed for a larger boundary which includes them all, does not give constructive possession of the controverted tract, against the true owner thereof.   There must be actual possession of some part of the land in controversy before the rule of constructive possession can apply.   (p. 548).

4. JUDGMENT—*Res Judicata—Estoppel.*

    One is not estopped by proceedings in a suit to which he was not a party, when not claiming a right in privity with a party thereto.   (p. 550).

5. TAXATION—*Payment—Forfeiture—Adverse Possession.*

    Payment of taxes upon land by either of two adverse claimants thereof, claiming title from the same person as a common source, prevents a forfeiture thereof in the name of the person under whom they so claim.   (p. 552).

6. ADVERSE POSSESSION—*Deeds—Probative Effect.*

    A deed which does not identify the land in controversy, and is not shown to include it, is not evidence of colorable title thereto.   (p. 553).

7. SAME—*What Constitutes—Wild Lands.*

    Occasional cutting of timber on, and ranging cattle over, wild and unenclosed land, is not such occupation of it as will amount to adverse possession.   (p. 547).

Error to the Circuit Court, Logan County.

Action by J. E. Chilton against Anderson White and others. Judgment for defendants, and plaintiff brings error.

*Affirmed.*

*Ellison & England,* and *Price, Smith, Spilman & Clay,* for plaintiff in error.

*E. H. Greene,* and *Chafin & Bland,* and *Campbell, Brown & Davis,* for defendants in error.

WILLIAMS, JUDGE:

This action of unlawful entry and detainer was brought by J. E. Chilton against Anderson White and others in the circuit court of Logan county to recover possession of 23,647½ acres of land. It was tried by the court in lieu of a jury, and resulted in a finding and judgment in favor of defendants, and plaintiff obtained this writ of error.

The land is composed of contiguous tracts, and the description in the writ is by exterior boundary lines of the whole. Defendants disclaimed possession, and the right to possession, of all of the land except a tract of 842½ acres which lies wholly within the larger boundary. The right to the possession of this smaller tract is the real contention. The relation of landlord and tenant does not exist between the parties. If defendants entered unlawfully, and by force ousted plaintiff, he would be entitled to recover irrespective of his right to the possession or ownership of the land. The law does not permit even the true owner of land to assert his rights in such unlawful manner. *Moore* v. *Douglas,* 14 W. Va. 708; *Duff* v. *Good,* 24 W. Va. 682; *Fisher* v. *Harmon,* 67 W. Va. 619; *Olinger* v. *Shepherd,* 12 Grat. 462. But there is no proof that defendants entered unlawfully. Their entry was peaceable, and under a claim of right. The tract in dispute is wild, timbered land, and defendants entered upon it about two years, or a little more, before suit and built small houses on it, and are now occupying them with their families, claiming title by conveyance from Harriet Jarrell and her husband, made in 1907, to her nine children. Defendants are her sons and sons-in-law.

While unlawful entry and detainer is purely a possessory action, and may be maintained without regard to title, still title is sometimes involved in the action, as an incident to the right of possession; for, in the absence of actual possession, constructive possession belongs to him who has the title. "Title draws after it possession of property not in the adverse possession of another." *Moore* v. *Douglas, supra; Olinger* v. *Shepherd, supra;* and *Duff* v. *Good, supra.* And constructive possession by the true owner is sufficient to enable him to maintain the action against a wrongdoer, or mere trespasser. Plaintiff claims under color of title, derived mediately from Harriett Jarrell in 1888, and adverse possession thereunder for ten years or more before defendants entered. Defendants claim by deed direct from said Harriett Jarrell and her husband, made in 1907, and lawful entry thereunder.

The issue depends upon the true ownership of the land.

The case was tried upon an agreed statement of facts, upon record evidence and testimony of witnesses, the testimony relating chiefly to the matter of actual possession by plaintiff and those under whom he claims, of the tract in dispute. A careful examinination of that evidence satisfies us that it is not sufficient to prove actual, adverse possession by plaintiff of the 842½ acres. McClintock cut the poplar timber off the tract, beginning in 1890 and completing it in 1892 or 1893. He located his saw mill on the tract and also built shanties on it for the accommodation of his men, but as soon as the work was done his actual occupancy ceased. The work occupied less than three years. No other person is shown to have lived on the land. Plaintiff and his predecessors in title employed agents to look after it and keep off trespassers. These agents lived in the neighborhood of the tract, and were authorized to lease it, and did lease it to others who ranged their cattle on it during the summers, for a number of years. But the boundary was not enclosed. There was a fence extending for 100 or 150 yards across Seng Camp branch, from hill to hill, but there is no evidence that cattle did not have free access to the land from all other quarters. S. S. Chambers who was the first man employed by McClintock to look after the land testifies that the fence was on the land of Mr. White who owned land adjoining the controverted tract. There was also about an acre of cleared

land in the bottom adjoining this fence which had been cleared for a good many years, but when and by whom does not appear. Chambers says this cleared ground was enclosed and cultivated in corn a year or two by Mr. B. W. White to whom he had leased the land, or by a sub-lessee of Mr. White, but says that it lay out uninclosed a portion of the time. The proof does not show that this acre was kept enclosed and cultivated for any number of consecutive years. The character of possession which the evidence tends to prove plaintiff and his predecessors in title had of the Harriett Jarrell tract, does not constitute adverse possession. It lacks the important elements of notoriety, continuity and exclusiveness. *Core* v. *Faupel,* 24 W. Va. 238. "There can be no adverse possession of wild lands as against the superior title unless such possession is actual, exclusive, visible and notorious." *Wilson* v. *Braden,* 56 W. Va. 372. Occasional cutting of timber, or ranging cattle over uninclosed wild lands, is not sufficient. *Yokum* v. *Fickey,* 37 W. Va. 762; *Oney* v. *Clendenin,* 28 W. Va. 34.

But counsel for plaintiff insist that he and his predecessors have had constructive adverse possession of the Harriet Jarrell tract, and that such constructive possession is all that the law requires, to invest him with indefeasible title. It is agreed that on October 1, 1891, Alexander McClintock conveyed the 23,647 acres to P. B. Dobbins, trustee, as one entire tract, describing it by exterior boundary lines; that the disputed tract is situate wholly within those boundary lines; and that the land has come down to plaintiff from said Dobbins, trustee, through several *mesne* conveyances, as a single tract described in the same manner. It is also agreed that plaintiff; and his predecessors in title, have had actual, adverse possession continuously, since 1891, by their tenants of all the land outside of the 842½ acre, or Harriet Jarrell, tract. In view of these admitted facts, counsel for plaintiff insist that he has had adverse possession of the Harriet Jarrell tract for the same period, on the principle that, if a person has color of title to two contiguous tracts of land and is in actual possession of one of them, his possession will extend so as to include both tracts. This is a rule generally recognized as law. *State* v. *Harmon,* 57 W. Va. 447. But the application of it is limited by another well defined principle, which is, that constructive possession never runs against the

true owner, unless there has been *actual* adverse possession of
some part of the land in controversy. Here the Harriet Jar-
rell tract is the only land claimed by defendants. If plain-
tiff had had actual adverse possession of some part of it, such
actual possession would extend, by construction, to the whole
tract, because the whole is included in his deed. But not hav-
ing actual adverse possession of any part of the disputed land,
the rule contended for can not apply. Possession on the 23,647
acres, outside of the 842½ acres, would not be notice to defend-
ants that plaintiff claimed the 842½ acres. Possession must
be such as amounts to constructive notice of the adverse claim,
and such as would give the true owner a right to sue for tres-
pass. Such can never be the case unless the trespass is commit-
ted upon some part of the disputed boundary. The present case
is not distinguishable from that of an ordinary interlock of
boundaries between junior and senior patentees. The junior
patentee's possession, outside of the interlock, avails nothing.
It is never construed to embrace the land within the interlock,
as against the senior patentee. The senior patentee's title
draws after it the constructive possession of the whole of his
grant, what is within as well as what is without the interlock,
so long as there is no actual adverse possession within the in-
terlock. But, if the junior grantee has had actual adverse pos-
session of some part of the interlock, the disputed boundary,
then such possession, be it of ever so limited a portion of it, is
construed to extend and embrace the whole of the interlock,
provided the senior grantee has not also had actual possession
of some part of it. *Garrett* v. *Ramsey,* 26 W. Va. 345; *Tay-
lar's Devisees* v. *Burnsides,* 1 Grat. 165; *Overton's Heirs* v. *Da-
visson,* 1 Grat. 211; *Sulphur Mines Co.* v. *Thompson's Heirs,*
93 Va. 293. The principle which we must apply to the pres-
ent case was declared in *McNeeley* v. *Oil Co.,* 52 W. Va. 616, as
follows: "Where an occupant's boundary covers adjoining
lands of separate owners, his possession on land of one of them
will not be adverse possession of land of the other, without ac-
tual possession of such other's land, on the theory that posses-
sion of part is possession of the whole." And in *Camden* v.
*The West Branch Lumber Co.,* 59 W. Va. 148, it was stated in
the following language: "The actual possession of the owner
of a tract of land, lying adjacent to another tract of uncleared

land, the title to which is vested in another person by a grant from the State, is not extended over a portion of such other tract by the acquisition of a junior patent, covering such portion and purporting to vest title thereto in the owner of such first mentioned tract, however long such possession may continue. To work an ouster of the elder patentee and hold adversely to him, the junior patentee must take actual possession of some part of the land included in the junior patent and within the boundaries of the senior patent." Such is also the statute law of this State. Sec. 19, ch. 90, Code. And such is also the rule adopted by the courts of other states. See the following cases: *Kimball* v. *Stormer,* 65 Cal. 116, 3 Pac. 408; *Jones* v. *Gaddis,* 67 Miss. 761, 7 So. 489; *Byrd* v. *Phillips,* (Tenn.) 111 S. W. 1109; *Turner* v. *Stephenson,* (Mich.) 2 L. R. A. 277. In the foregoing discussion it is assumed that defendants are claiming under the older and superior title, a matter depending on other questions presented by the record, and to be determined by this opinion.

Both parties claim title to the 842½ acres from Harriet Jarrell, a daughter of Boyd W. Mullins, deceased, as a common source, plaintiff claiming, remotely, under a special commissioner's deed, directed to be made to M. B. Mullins by the circuit court of Logan county in a suit brought by Hinchman, Administrator *de bonis non* of Boyd W. Mullins, deceased, against his heirs, which deed bears date 19th July, 1888, and defendants claiming by deed directly from said Harriet Jarrell and her husband to her nine children, made in 1907. Defendants are her sons and sons-in-law.

Counsel for plaintiff claim that defendants are estopped by the proceedings in that suit. On the other hand, counsel for defendants insist that the doctrine of estoppel has no application, because, they say, Harriet Jarrell was not made a party to that suit. A copy of the proceedings in that cause is made a part of the record in this, and it thereby appears that Boyd W. Mullins died, intestate, about the year 1869, seized of several tracts of land which had been granted to him by the Commonwealth of Virginia, between the years 1838 and 1855, and that the 842½ acres is a part of those lands; that he left six children as his only heirs at law, among whom was a daughter, Harriet, who married Paris Jarrell; that in 1875 the aforesaid suit

was instituted by the administrator of B. W. Mullins, deceased, against his heirs at law, for the purpose of selling his lands, or a portion thereof, in order to pay his debts, the bill alleging that the personal property was not sufficient to pay them. Harriet Jarrell appears not to have been named as a defendant either in the bill or the summons. There was an ascertainment of the debts and a decree of sale entered, 13th April, 1876, but no sale was made. Pending the decree of sale, the six children of Boyd W. Mullins, deceased, entered into a written agreement, the husbands of the married daughters joining therein, partitioning the land among themselves, and agreeing to pay their ratable portion of the debts due by the estate. The various lots of land were described by metes and bounds; lot No. 3, which is the 842½ acres in controversy, falling to Harriet Jarrell. They also bound themselves by that agreement to make an interchange of deeds, as soon as all the debts were paid, and further agreed, that if they did not do so, "to direct P. K. McComas, the commissioner appointed to sell the land aforesaid, in the suit of *Hinchman* v. *Mullins' heirs,* or whoever may hereafter be appointed or substituted to make said deeds, to convey the said lands as partitioned as aforesaid." This agreement bears date the 12th February, 1880. The cause was thereafter, on the 9th April, 1886, again referred to a commissioner, to ascertain who were then the heirs of said B. W. Mullins, deceased; what division had been made of the lands amongst them; and how much of the debts were unpaid, and from whom due. Pursuant to that reference there was a report filed by the commissioner, from which it appears that two of the children of B. W. Mullins, deceased, viz.: Charles Mullins and Henry Mullins, had died, each leaving a number of infant children. The commissioner also reported the amount of the debts which had been paid, by which ones of the children paid, and how much was yet due from each. The agreement among the heirs to partition the land is exhibited with his report. On the 4th of July, 1887, the cause was again heard upon this second report of a commissioner, and a decree was made reciting that the lands had been partitioned among the heirs, and that M. B. Mullins had become the owner of the interest assigned to Harriet Jarrell, and H. C. Ragland was appointed a special commissioner to make conveyance of the same, when the debts due by the estate should be

paid. Pursuant to that decree, said special commissioner, on the 19th July, 1890, conveyed the Harriet Jarrell interest to M. B. Mullins. Alexander McClintock acquired the M. B. Mullins title to the Harriet Jarrell interest, and through various *mesne* conveyances, it has passed to plaintiff.

It nowhere appears that Harriet Jarrell appeared, either in court or before the commissioner. We have already said she was not a party to the bill. If it could be said that she submitted herself to the jurisdiction of the court by the partition agreement, it would only be for the purpose of carrying out the agreement, by having the special commissioner to execute proper deeds to the several parties thereto, in the event they failed or refused to do so themselves. But the decree of July 4, 1887, finds that M. B. Mullins, a stranger to the agreement, had acquired Harriet Jarrell's interest. How did the court so find, and on what evidence? The commissioner did not so report, and there is no evidence, shown in the record, whereby the court could have found that fact. She is not bound by the recital in the decree, not being a party to the suit, and we know of no rule of law which could be applied to estop her from asserting her title. Judgments and decrees bind only parties and privies. She was not a party, nor is she privy in estate to any one who was a party. The deed executed by Ragland, commissioner, while it may have served as color of title, if plaintiff and his grantors had held adverse possession of the land under it, did not operate to divest Harriet Jarrell of title.

But plaintiff claims that Harriet Jarrell's title is forfeited, and that the forfeiture enures to his benefit. It is agreed that no taxes have been assessed to, or paid by, Harriet Jarrell, or her grantees, on the 842½ acres, since the year 1888. Plaintiff contends that this proves a forfeiture of her title. But the taxes on the whole 23,647½ acres have been regularly paid by McClintock and those claiming under him, since that year. McClintock claimed the land in dispute, under deed from M. B. Mullins, who thought he was getting the title of Harriet Jarrell by the deed from Ragland, special commissioner. Both parties to the suit are claiming to own the Harriet Jarrell title, and the payment of taxes thereon by either of them would prevent a forfeiture of the land in her name. The payment of taxes by plaintiff, and his predecessors in title, on the 23,647½

acres which includes the Harriet Jarrell tract, has prevented a forfeiture. "The State is not entitled to double tax on same land under the same title." *State* v. *Allen*, 65 W. Va. 335.

"Where there is privity of title, one payment of taxes is sufficient and full satisfaction, whether the land is charged as a whole in the name of one, or the various interests separated and charged to the respective owners, dividing the valuation equitably between or among them as provided by section 25, chapter 29, Code." *State* v. *Low*, 46 W. Va. 451.

Finding that her title did not become forfeited to the state for non-entry and non-payment of taxes, and that the deed by Ragland, special commissioner, did not operate to divest her of title, it follows that Harriet Jarrell, her husband joining in the deed, could pass title to her children.

But plaintiff claims the land by another and distinct source of title also. He claims under a deed from Bur Wakeman's executors to Benjamin C. Bowman dated 28th February, 1891, and a deed from said Bowman and wife to Alexander McClintock. These deeds do not purport to convey the Harriet Jarrell land, nor do they identify it as a part of the land conveyed. The first deed mentioned describes the land as "all and every their right title and interest at law and in equity in and to any lands owned or claimed by the said Bur Wakeman at the time of his death or acquired by his said executors and trustees, or either of them, since his death and situate in the counties of Logan and Wyoming in the state of West Virginia, and within a certain patent for one hundred and forty two thousand (142,000) acres of land more or less, granted February, 19th, 1796, by the Commonwealth of Virginia to DeWitt Clinton which patent to De-Witt Clinton is bounded as follows." Then follows the metes and bounds. To prove that the disputed land was embraced in that deed, plaintiff examined, as a witness, Alfred Buskirk a surveyor, who had run some of the lines of the DeWitt Clinton patent. He says that, in his opinion, the Harriett Jarrell tract is included within the boundary of the DeWitt Clinton grant. His testimony, however, shows that he had very little knowledge of the lines of that large survey, and especially relative to the lines nearest to the disputed land. It appears that he did not run from known corners, but "picked up" a line which had been partly run and left off by some other surveyor. One of the

lines, he says, he carried through to Guyandotte River, and missed the corner about 5,000 feet. He ran a line from a corner on Guyandotte River, toward Spruce River, on a branch of which the land in controversy lies, and says the distance of the line which he was running gave out about a mile from the mouth of Spruce River, and that he then turned east, on a division line of the survey. He says he was then within three, or three and a half, miles of the land in controversy. His testimony is entirely too vague and uncertain to prove that the DeWitt Clinton grant includes the Harriett Jarrell claim. The very purpose of colorable title is to define the extent of one's claim by furnishing evidence of location and boundaries. But there is still a stronger reason why the aforesaid deed is not sufficient as color of title to the land in question and that is, that it purports to convey only such land, within the DeWitt Clinton grant, as was "owned or claimed by the said Bur Wakeman at the time of his death or acquired by his said executors or trustees or either of them since his death." It does not purport to convey all the land within the DeWitt Clinton grant, and there is no evidence respecting the quantity or location of the land which the deed did convey. Plaintiff does not connect with the DeWitt Clinton grant. It was put in evidence by defendants, however, to show that it was an inclusive grant. 40,000 acres of prior claims, located within its boundaries, were excluded from its operation, and it does not appear that the Harriet Jarrell claim was not a part of the land thus excluded. It is, therefore, not evidence of colorable title to the Harriet Jarrell tract of land.

The other deed above mentioned, from Bowman and wife and the Bowman Lumber Company to Alexander McClintock, which bears date 1st September, 1891, is much more uncertain and indefinite as to location and description of the land conveyed by it than the first one. The only description given in it, of the lands conveyed, is by reference to other deeds, by dates, and by numbers and pages of the deed books wherein they are recorded. None of the deeds thus referred to are found in the record.

In view of the fact that there has been no actual adverse possession of the land in controversy, there is no limitation upon Mrs. Jarrell's right to assert title to it. Her inaction for so

many years is not a matter of which plaintiff can take advantage. The rules and principles governing cases of this character are well defined, and in view of them we are compelled to affirm the judgment.

*Affirmed.*