McCoy *v.* Anthony Land Company, Inc.

5-1754                                      322 S. W. 2d 439

Opinion delivered March 16, 1959.

[Supplemental opinion on rehearing delivered April 20, 1959]

*J. S. Brooks* and *Spencer & Spencer,* for appellant.

*J. Hugh Wharton* and *J. R. Wilson,* for appellee.

George Rose Smith, J.   In 1957 the appellants obtained a decree quieting their title to an eighty-acre tract

which we may describe merely as the west half of the northeast quarter. Neither the appellee nor its immediate predecessors in title were made parties to the suit, although they were the record owners of approximately the north 40.45 acres of the tract, their part being the north forty acres and the north fifteen feet of the south forty acres. A few months after the decree was entered the appellee filed its present complaint, asking that the decree be set aside insofar as it purported to affect the appellee's land. After an extended hearing the chancellor granted the relief sought by the appellee. In contending for a reversal of the decree the appellants insist that they have acquired title to the entire eighty acres by adverse possession.

Many years ago these eighty acres and other adjoining lands were owned by the McCoy (or McCorvey) family. In 1930, however, the lands were divided by a partition decree which may be regarded as the present litigants' common source of title. With respect to the eighty acres now partly in question we need only say that (a) the north 40.45 acres, now claimed by the appellee, were allotted to the appellee's predecessors in title, (b) 20.97 acres, lying south of the tract just mentioned, were allotted to Wood and Furlow, and (c) 7 acres, also lying south of the first mentioned tract, were allotted to Jeannie McCoy, the appellants' mother. In 1941 Jeannie McCoy executed to the appellants a deed purporting to convey the entire eighty acres, though the grantor had record title only to the seven acres referred to in (c), above.

In asserting title to the entire eighty acres the appellants make only two contentions, both involving adverse possession.

First, it is said that the proof establishes actual possession by the appellants for more than seven years

before the appellee's complaint was filed. We think the weight of the evidence to be rather clearly against this contention. According to the testimony of the appellee's witnesses the 40.45-acre tract now in dispute has been wild and unimproved at least since Frank Anthony bought it in 1942. The various Anthony owners, engaged in the lumber business, have treated the tract as timberland, have marked their lines by painting trees along the boundaries, and have had the land inspected frequently. Their overseers state positively that the tract has been wild and unimproved through the years, unfenced and uncultivated. It is conceded that the Anthonys have paid the taxes every year since 1942.

The appellants' testimony falls decidedly short of rebutting the appellee's proof. Several of the McCoys say that the family has been in continuous possession of the eighty acres since 1941, but this assertion merely reflects a state of mind unsupported by acts of physical dominion over the property. There is no indication of actual possession on their part except for statements that they cut timber anywhere on the eighty acres whenever they wanted to. The evidence does not show that the cutting of timber was ever so extensive or so continuous as to put the true owners on notice that the land was adversely occupied. *Earle Imp. Co.* v. *Chatfield,* 81 Ark. 296, 99 S. W. 84; *Sanderson* v. *Thomas,* 192 Ark. 302, 90 S. W. 2d 965. Upon a single occasion the McCoys stopped the appellee's logging operations on the 40.45 acres, but this happened only two years before the appellee filed this suit.

Secondly, the evidence, which is similar to that adduced when the court quieted the appellants' title in 1957, shows that the McCoys have had actual possession of the 20.97-acre parcel that was allotted to Wood and Furlow by the 1930 partition decree. See *Wood* v. *McCoy,* 228 Ark. 880, 311 S. W. 2d 755. From this proof it is argued that the actual possession of part of the eighty acres gave the appellants constructive possession of the whole, since the entire eighty was described in the deed they received from Jeannie McCoy in 1941.

The rule that one's actual possession is constructively extended to the limits of his color of title is not applicable here, for the 40.45-acre tract and the 20.97-acre tract were separately owned. The controlling distinction was well stated in *Haggart v. Ranney*, 73 Ark. 344, 84 S. W. 703: "If A under a deed describing a tract of 80 acres of land owned by B, but not in his actual possession, enters and holds actual possession of a part, claiming the whole, his possession will be deemed to include the entire tract to the limits of the boundaries described in his deed; but if C owns 40 acres of the land, and A has no actual possession of any of that part owned by C, his actual possession of a part of B's land will not draw to it the constructive possession of the tract owned by C, even though it be within the limits of the boundaries described in the deed." The rule that governs when the tracts are separately owned is both practical and just, for otherwise the owner of wild land would be compelled to seek out and examine the color of title held by every newcomer taking possession of other land in the vicinity, lest the latter's actual possession be constructively extended to destroy the former's title.

Affirmed.

HOLT, J., dissents.

GEORGE ROSE SMITH, J., on rehearing. In a petition for rehearing the appellants insist that the rule of *Haggart v. Ranney* should not be applied in this case, for the reason that in 1941 and 1942 J. R. Wilson, one of the appellee's predecessors in title, was the owner of the 40.45-acre tract and was also the owner of an undivided one-third interest in the 20.97-acre tract. It is accordingly argued that the two parcels had a common owner, so that the rule of *Haggart v. Ranney* is inapplicable.

Assuming that this contention may be presented for the first time on rehearing, the present petition does not sufficiently show that Wilson had any interest in the 20.97 acres, nor are we referred to such proof in the appellants' abstract or in the record, as Rule 20 (h) requires. The record shows, as we stated in the original

opinion, that in 1930 the 20.97-acre tract was allotted to Wood and Furlow. To show Wilson's supposed ownership the appellants now refer us to certain tax receipts in which he is listed as an owner, along with Wood and Furlow, but a mere tax receipt does not establish ownership. We are also told that Wilson was a plaintiff in the related case of *Wood* v. *McCoy*, cited in our original opinion, but that fact alone does not prove his ownership, and we cannot explore the record in that appeal, for we do not take judicial notice of the facts in other cases in this court. *Murphy* v. *Citizens' Bank of Junction City*, 82 Ark. 131, 100 S. W. 894, 11 L. R. A. N. S. 616, 12 Ann. Cas. 535.

The petition for rehearing is denied.

J. SEABORN HOLT, J., dissenting. I feel very strongly that the preponderance of the testimony in this case supports appellants' contention that they have acquired title to all of the 80 acres of land involved here by adverse possession.

The father and mother (Negroes) of the appellants here, Robert, Kine, Frank, Nettie, Jimmie and Lee McCoy, in 1941 deeded to them the W½ of the NE¼ of Section 35, Township 16, Range 14 West, 80 acres. This deed was recorded December 1, 1941. The father and mother of these appellants had been in possession of this 80-acre tract since 1933 and their children, upon receipt of the above deed, took possession and have been on the land and in possession until the present time. The record reflects that in 1944, J. R. Wilson and others filed suit against these same appellants seeking to quiet title to a tract containing 20.97 acres, carved out of this 80-acre tract. Frank and Aubra Anthony (appellees here) were made parties to this Wilson 1944 suit and although they were never served with summons, the evidence clearly shows that they had knowledge of that suit.

In that suit these McCoy children answered, alleging title to the entire 80 acres involved here and asking that their title be quieted to all of it. Trial resulted in a decree quieting the title of appellants in the entire 80 acres and specifically in the 20.97-acre tract directly involved. That

decree was based on the actual adverse possession of appellants for more than the statutory period of seven (7) years. The decree contained these recitals:

"From all of the above the court being now well and sufficiently advised, finds: That Jeannie McCoy (McCorvey) and Henry McCoy (McCorvey) took possession of the W½ of the NE¼ of Section 35, Township 16 South, Range 14 West, in 1933, and remained in open, peaceable, notorious, continuous and hostile possession of the above described lands until they conveyed said property to Robert McCoy, Kine McCoy, Frank McCoy, Nettie McCoy, Jimmie McCoy and Lee McCoy, on December 1, 1941.

"That subsequent to December 1, 1941, the grantors in said deed remained in adverse possession of the W½ of the NE¼ of Section 35, Township 16 South, Range 14 West, and have continued to remain in adverse possession of said lands until the present time.

"That at the time of the filing of this suit in 1944, title in and to the above described property had already vested in the defendants, Robert McCoy, Kine McCoy, Frank McCoy, Nettie McCoy, Jimmie McCoy and Lee McCoy on account of their adverse possession and the adverse possession of their grantor—

"That the defendants, Robert McCoy, Kine McCoy, Frank McCoy, Nettie McCoy, Jimmie McCoy and Lee McCoy, are entitled to have their title in and to the above described lands quieted and confirmed in them as against all claims of the plaintiffs. That the complaint of the plaintiffs should be dismissed for want of equity and the defendants are entitled to their costs.

"It is, therefore, by the court considered, ordered, adjudged and decreed that the complaint of the plaintiffs be and the same is hereby dismissed for want of equity and the title in and to the W½ of the NE¼ of Section 35, Township 16 South, Range 14 West, is hereby quieted and confirmed in the defendants, Robert McCoy, Kine McCoy, Frank McCoy, Nettie McCoy, Jimmie McCoy and Lee McCoy, as against the plaintiffs, N. N. Wood, W. L. Furlow, Aubert Martin and J. R. Wilson, which tract includes

the 21-acre tract specifically claimed by the plaintiffs, . . . ''.

It appears that prior to the 1944 suit *supra* J. R. Wilson and others on November 7, 1942 conveyed a portion of this 80-acre tract (approximately 40 acres) to Frank Anthony, a partner in the Anthony Land Company, appellee. It appears practically undisputed that at the time of the above 1942 conveyance to Anthony, J. A. Simmons, as Frank Anthony's agent, handled the details of the purchase, checking the records to determine the state of the title to this 80 acres. Simmons testified: Q. ''And you found the instuments that were of record affecting title before you purchased for Anthony?'' A. ''At the time I purchased.'' Q. ''Prior to that time there was a deed of record from Jeannie McCorvey and her husband to Lee McCorvey, Robert McCorvey, Kiney McCorvey, Jim McCorvey, Frank McCorvey, in other words to the defendants in this suit covering the W½ of the NE¼; of course you found that deed too?'' A. ''I did. * * *'' Q. ''But at that time you knew they were in possession of some part of it with a deed to the whole eighty?'' A. ''That's right.'' In addition, Simmons found that the taxes for the year 1941, the year immediately preceding his purchase, had been paid by Jeannie McCoy, appellants' mother.

As a result, Simmons found the recorded deed made to these appellants by their father and mother in 1941 and further learned that appellants were in actual possession of part of the 80 acres and were claiming title to the entire 80, yet with this knowledge Frank Anthony completed the purchase and took a deed to slightly more than 40 acres as above stated. The evidence shows that there were two houses on this 80-acre tract, a garden, some of it in pasture, and the remainder was used for growth of timber. One of the appellees, Aubra Anthony, testified: Q. ''Have they at any time ever asserted to you any claim of ownership to this sixty acres of land?'' A. ''Well, Bob McCoy has said something about they owned the land, and I told him that I didn't know anything about it, all I knew we had a deed and was paying taxes on it.'' John Daniels testified that the Anthonys

never cut any timber off this land but that when they attempted to they were stopped by the appellants, the McCoys. D. L. Staples testified, in effect, that he had been familiar with the land for about 35 years, that the parents of appellants and then appellants had been in possession of the 80-acre tract during all of that period. D. L. Staples, Jr., tended to corroborate his father's testimony and further testified that the 80-acre tract was known in the community as the 'McCoy Place'. Another witness, I. E. Adams, testified that the McCoys were in possession of the entire 80 acres and had been for approximately 60 years, and all of these appellants testified as to their actual possession, occupancy and claim of ownership of the entire 80 acres. The 1941 deed above, from the parents to appellants, constituted color of title. Appellants, it is conceded, had title by adverse possession to a part of this 80-acre tract, that is—20.97 acres. It seems to me that the law is clear that possession of even a part of the 80-acre tract under color of title to the whole tract, constitutes possession in law of the whole tract and that title ripened by appellants adverse possession. In *Hart* v. *Sternberg,* 205 Ark. 929, 171 S. W. 2d 475, in an opinion by the late Judge Robins, we said: "This court has often held that the actual possession of a part of a tract of land described in a deed gives the grantee possession constructively, to the whole of the tract as therein described. See *Connerly* v. *Dickinson,* 81 Ark. 258, 99 S. W. 82, and cases there cited. *Wells* v. *Rock Island Improvement Co.,* 110 Ark. 534, 162 S. W. 572, 573. Adverse possession is one of the modes of acquiring title to property. It has been defined as the open and notorious possession and occupation of real property under an evident claim or color of right. It is said to be a possession in opposition to the true title and real owner—a possession which is commenced in wrong and is maintained in right. Again it has been defined as the ripening of adverse possession into title by lapse of time. A title acquired by adverse possession is a title in fee simple, and is as perfect a title as one by deed from the original owner or by patent or grant from the government. . . . It is a well-established doctrine of this court that title to lands may be acquired

by adverse possession, which title may be asserted as effectively as title acquired by deed.''

Accordingly, I would reverse and dismiss appellee's complaint for want of equity.