118 So.2d 549 (1960)
Mae D. BRIDGES, a Widow, Appellant,
v.
Eddle D. THOMAS and Emma K. Thomas, His Wife, Appellees.
No. 1431.
District Court of Appeal of Florida. Second District.
February 19, 1960.
Rehearing Denied March 14, 1960.
*550 Richard A. Lawrence, Melbourne, for appellant.
Roger F. Dykes, Cocoa, for appellees.
ALLEN, Chief Judge.
The appellant, as plaintiff in the lower court, filed an action to have a deed and purchase money mortgage between her and the appellee-defendants reformed so as to reduce the quantity of land that plaintiff intended to convey to defendants. The complaint also stated that "should said defendants be dissatisfied with said transaction" that the same be cancelled. The defendants answered admitting the transaction with plaintiff but averred that it was an arm's length transaction and that the plaintiff instead of setting up any mistake had only manifested a change of mind in regard to the width of the land sold to defendants. After a hearing on the merits and examining the documents involved, the lower court entered final judgment in favor of defendants.
The plaintiff was the owner of two parcels of land contiguous to each other extending from the Florida East Coast Railway across U.S. Highway No. 1 to the Indian River. The parcels are designated as No. 1 and No. 2. The creek, at its confluence with the Indian River, was believed by plaintiff to divide parcel No. 1 from parcel No. 2.
In the latter part of 1956, plaintiff negotiated with the defendants for the sale of part of parcel No. 1. Plaintiff did not have a survey of her land nor did she have an abstract of title, but based on the assumption that the creek was supposed to be the boundary between the two parcels, the plaintiff had defendant draw, in the presence of plaintiffs, a map of the land to be sold. This map showed the north-south limits of the land along the river to be 150 feet, the northern boundary meandering westerly along the creek to a point where the creek is 60 feet north of the southern boundary line and then along this 60 foot line west to the railroad. A price of $3,500 was set with $300 to be paid down as a binder. On October 20, 1956, the binder was paid and a receipt given. The deed conveying this land to defendants was dated and acknowledged on November 14, 1956.
Sometime in May, 1957, a survey was made for defendants and plaintiff by one Heath. This survey showed the center of the creek to be 193.55 feet (instead of 148 feet as listed in the deed) north of the south boundary of parcel No. 1, with a meandering river frontage of 220 feet. Upon discovery that the creek was actually in parcel No. 2, retained by plaintiff, the defendants *551 were requested to adjust their north boundary to 148 feet north of the south boundary. The defendants refused and this suit was filed.

To better understand this transaction, a copy of the survey sketch is attached. The defendants contend the transaction was to cover from the center of the creek to the *552 south boundary. Plaintiff contends it was to cover from the south boundary north 148 feet, but in no event was the conveyance to cover any land north of the creek. Plaintiff also contends that she relied on a mistaken assumption that the creek divided the two parcels of land. It appears from the record, however, that the plaintiff told the defendants, "* * * I want you folks to have what is south of the creek, but I don't want you to come across the creek * * * that is the reason I am putting this 148 feet to keep you south of the creek." It also appears that plaintiff furnished a map to an out of state mortgagee prior to this transaction showing the creek to be the dividing line and subsequently a similar sketch was furnished to an abstract company by plaintiff. It should be noted that this abstract was not available when the conveyance in question was negotiated and consummated thus could not be the basis of the mistake.
The deed from plaintiff to defendants provides:
"Begin in center of Creek at confluence with Indian River at a point approximately 148 ft. North of South line of land owned by Mae D. Bridges; thence Westerly along center of said Creek to a point which is 60 ft. North of South line of said land owned by Mae D. Bridges; thence Westerly parallel to South line of said property aforesaid and 60 ft. distance therefrom to Florida East Coast Railway right-of-way; thence Southerly along East boundary of Florida East Coast Railway right-of-way to South line of said property of Mae D. Bridges; thence East along South line of Mae D. Bridges' property to the Indian River; thence Northerly meandering the West bank of Indian River to point of beginning. Together with riparian and littoral rights thereunto belonging, excepting right-of-way of U.S. Highway No. 1 as now located.
"Said land being part of Government Lot 2, Section 21, Township 29 South, Range 38 East, Brevard County, Florida."
For the purpose of determining whether equitable relief should be granted in this type situation the courts have divided the cases into two general classes: (1) where the sale is of a specific quantity which is usually denominated a sale by the acre, and (2) where the sale is of a specific tract by name or description, which is usually called a sale in gross. Inasmuch as the present transaction was clearly a sale by description with no mention of price per foot or acre, our discussion will be limited to sales in gross and the principles applicable thereto.
The question whether a sale is one in gross or by the acre is to be determined from the terms of the contract or deed and the surrounding circumstances. It is noted that the deed in question provides a point of beginning at the center of the creek at the confluence with Indian River but then further describes this point of beginning as being "* * * a point approximately 148 ft. North of South line * * *" It has long been held that monuments and natural landmarks as a general rule prevail over courses and distances for the purpose of determining the location of a boundary even though this means either the shortening or lengthening of distance. Daggett v. Willey, 6 Fla. 482; Hogans v. Carruth, 19 Fla. 84; Andreu v. Watkins, 26 Fla. 390, 7 So. 876; Mitchell v. Moore, 152 Fla. 843, 13 So.2d 314. The basis for the rule is that mistakes are deemed more likely to occur with respect to course and distances than in regard to objects which are visible and permanent and are accordingly more reliable evidence than courses and distances. Consequently, if marked trees or watercourses be called for in the deed, distances must be lengthened or shortened and courses varied so as to conform to those objects. Vol. 6 Thompson on Real Property, sec. 3327.
The case of Pierce v. Alexander, Tex. Civ.App. 1945, 189 S.W.2d 16, involved a factual question similar to the instant case. The deed in question in the Pierce case provided *553 that the east line of the parcel was to be 385 varas in length with its southern terminus at Wallace Creek. The evidence established that the creek was actually 405 varas from the northern terminus of the east line, or some 20 varas south of the 385 varas point as set forth by the distance call in the deed. The Court of Civil Appeals of Texas held that since the call was for Wallace Creek, the boundary line must be extended to the creek even though the stated length thereof falls short of the creek.
It would therefore appear that in order to give effect to the entire description of the tract of land in the instant case, the approximate distance must give way to the superior call of the confluence of the creek with the river as the point of beginning. The land having been sold in bulk for a lump sum with no mention of quantity being the essence of the contract, the parties are deemed to have assumed the risk of deficiency or excess in the absence of fraud. Vol. 8 Thompson on Real Property, sec. 4580. This principle has been stated by the Florida Supreme Court in Citizens' State Bank v. Jones, 100 Fla. 1492, 131 So. 369, 373, as follows:
"`The rule denying relief in case of a deficit or an excess is frequently applied in equity as well as at law, but a court of equity will not interfere on account of either a surplus or a deficiency where it is clear that the parties intend a contract of hazard, and it is said that although this general rule may not carry into effect the real intention of the parties it is calculated to prevent litigation.' 27 R.C.L. 434, § 147."
This case was quoted from with approval in Firstbrook v. Buzbee, 101 Fla. 876, 132 So. 673, and appears to be supported by numerous other jurisdictions. See Annotation 1 A.L.R.2d 9.
The parties having dealt at arm's length and the deed being silent as to the specific quantity of land conveyed, any excess over and above the approximated distance must be deemed to have been precipitated by plaintiff's own conduct in failing to know the extent of property she offered and undertook to sell. If one's mistake is due to his own negligence and lack of foresight and caution, in the absence of fraud or imposition, equity will not grant relief. Graham v. Clyde, Fla. 1952, 61 So.2d 656.
Finding no error by the chancellor and for the reasons assigned herein, the judgment of the lower court is affirmed.
Affirmed.
KANNER and SHANNON, JJ., concur.