DELPHEY ET AL. *v.* SAVAGE ET AL.

[No. 129, September Term, 1961.]

Decided *January 23, 1962.*

*Motion for rehearing filed February 23, 1962, denied March 23, 1962.*

The cause was argued before HAMMOND, PRESCOTT, HOR-NEY, MARBURY and SYBERT, JJ.

*G. Richard Park,* with whom were *W. Jerome Offutt* and *Miller & Miller* on the brief, for the appellants.

*J. Hodge Smith,* with whom was *James W. Hane* on the brief, for the appellees.

MARBURY, J., delivered the opinion of the Court.

This is an appeal by the plaintiffs below, from an order of the Circuit Court for Montgomery County, sitting as a court of equity, dismissing their amended bill of complaint praying for injunctive relief against an alleged trespass, and a declaration of absolute ownership of certain land.

The record discloses that the appellants and appellees, defendants below, are owners of adjacent lots on Seneca Creek, in Montgomery County, Maryland. A boundary dispute arose as to what constituted the appellants' south line of their lot which, by the description in appellees' deed, became automatically the appellees' north line. The line in question runs nearly from Seneca Creek on the west to Riley's Lock Road [1] (which is approximately parallel to the creek) on the east, a distance of somewhat less than 50 feet. There is a building on each

---

1. Also referred to as Seven Locks Road, and Seneca Locks Road in conveyances referred to herein.

of the lots (both parties maintain a boat hoist business on their respective properties), the aforementioned line running between them. As placed by the appellees, the line comes within 3 to 6 feet of appellants' building, which the appellants claim cuts off access by automobile south of their building from the road to the creek, which access the Delpheys claim their hoist business must have in order to be attractive to prospective customers.

Appellants and appellees trace title to their lots to a common grantor, Hatton A. Waters. Waters acquired two parcels of land by deed from Mary E. West—from one of which parcels the lots here involved were carved—by deed in 1926, the parcel from which the subject lots came being described as a perfect parallelogram, 293 feet by 500 feet.

The first conveyance out from Waters was by deed dated June 10, 1928, to Hunter Pumphrey and John H. Pumphrey, for a lot described as follows:

> ". . . all that part of a tract, piece or parcel of land situate, lying and being in said Montgomery County, Maryland, and described as follows; to wit: Beginning for the same at an iron pipe marked A Driven in the ground between Seneca Creek and Seven Locks road at a point 215 2/10 feet east [southeast] from the beginning of the 7th line of a conveyance made the 23rd day of September, in the year 1926, by Mary E. West to Hatton A. Waters for 3 54/100 acres of land, more or less, and recorded in Liber P.B.R. No. 412, Folio 35, one of the Land Records of said Montgomery County, Maryland and running thence with said 7th Line South 8 degrees, 15 minutes East 75 feet to a pipe marked B, thence to include a part of the aforesaid conveyance north 78 degrees 27 minutes, 34 3/10 feet to pipe marked C on Western Boundary of aforesaid road, thence with said road North 11 degrees 28 minutes West 74 9/10 feet to pipe marked D, thence South 78 degrees 27 minutes West 30 2/10 feet to the place of beginning containing 2410.7 square feet, more or less, . . ."

This lot was conveyed by Pumphrey to Robert C. Albright in 1934 and will be referred to as the Albright lot.

The next conveyance out from Waters in the order of seniority was by deed dated June 22, 1928, to Brice P. Selby, et al., for a lot described as follows:

"Beginning for the same at an iron pipe marked E Driven in the ground at a point three hundred and six tenths feet from the conveyance made the twenty-third day of September, nineteen hundred and twenty-six by Mary E. West to Hatton A. Waters, for three and fifty-four one-hundredths acres of land, more or less, and recorded in Liber P.B.R. No. 412 folio 35 one of the Land Records of Montgomery County, Maryland, said pipe is south eight degrees and fifteen minutes east ten feet from stone marked B at end of first line of a conveyance from Hatton A. Waters to H. and J. H. Pumphrey and is between Seneca Creek and Seneca Locks Road, and running thence with aforesaid seventh line south eight degrees fifteen minutes East seventy five feet to an iron pipe marked F thence to include a part of the aforesaid conveyance (Mary E. West to H. A. Waters) north seventy-eight degrees and twenty-seven minutes East forty and three tenths feet to pipe marked G on western boundary of Seneca Locks Road thence with western boundary of said road North twelve degrees and sixteen minutes east seventy-four and nine-tenths feet to stake marked H. thence south seventy-eight degrees twenty seven minutes West thirty-five and five hundredths feet to the place of beginning, containing two thousand eight hundred and twenty and four tenths (2820.4) square feet of land, more or less."

It was this lot that was conveyed in June 1950 to appellants and will be referred to as the Selby lot.

It will be noted that the pipe marked E, the beginning of the Selby lot, is at a point 300.6 feet from the beginning of the 7th line mentioned in the deed from West to Waters. By adding to 215.2 feet from the beginning of said 7th line, which

is the beginning point of the Albright lot, 75 feet along that line, which is the western boundary of the Albright lot, and 10 feet from stone marked B in the Albright lot conveyance, the total distance along that 7th line to the point of beginning of the Selby lot is 300.2 feet, which is only .4 of a foot from the location of the pipe marked E, the beginning point of the Selby lot.

At or about the time of the Waters to Selby deed, two pipes were placed in the ground by Waters to demark a right of way from Riley's Lock Road to the creek, and the southeast and northeast corners of the lots on either side—the Selby lot on the south, and the Albright lot on the north. This right of way was expressly left open by the description in the Waters to Selby deed and, as shown by the record, has been open and used from the time the pipes were placed to the present.

The owner of the Albright lot, north of the right of way, established a fence at least as early as 1936 on his southern boundary (the northern boundary of the right of way); and a garage wall (part of which still exists); a lattice fence and one of the pipes mentioned (which still exists), stood in a line on the northern boundary of the Selby lot (the southern boundary of the right of way) about the time of the Waters to Selby deed. Later on, appellants paved up to the northern boundary of the Selby lot as described above. The general reputation in the community has always been that a pipe still in existence is the northeast corner of the Selby lot, and Waters pointed out the property to Selby with reference to that pipe. No disputes about property lines arose during the time Waters was a frequent visitor to the area and, in fact, none arose until the appellees bought their lot in 1949.

With the exception of the Selby lot and the Albright lot, similar in size and located to the north, the remaining Waters parcel was acquired by A. R. Selby (no relation to Brice P. Selby, the owner of the Selby lot) by a sheriff's deed in May 1940, twelve years after the conveyance by Waters to Brice P. Selby. In 1942 A. R. Selby had a subdivision plat covering part of the remaining parcel prepared and recorded, but the plat did not include the lots of appellees or appellants.

The appellees' lot was first conveyed by A. R. Selby in 1948 and is described as lying between the Brice P. Selby lot (which is now the appellants' lot), and a lot to the south. Few metes, bounds, courses, distances, or monuments were given in the conveyance. The devisee of the grantee from A. R. Selby conveyed this lot to appellees in April 1949.

The only question presented is the location of the common boundary between the south line of the appellants' land and the north line of appellees' land.

The circuit court, Shure, J., found that the appellants did not meet the burden of proof to establish a certain pipe, found in the northeast corner of their property, as a monument so that the property lines of their lot could be found by running the lines called for in their deed from the pipe, which was referred to in the deed as a "stake", in order to establish title to their property as claimed.

A monument when used in describing land, can be defined as any physical object on the ground which helps to establish the location of the line called for. It may be either natural or artificial and may be a tree, stone, stake, pipe or the like. *Parran v. Wilson,* 160 Md. 604, 154 Atl. 449. Just as in contracts and wills the intention of the parties governs the interpretation of deeds. *Zittle v. Weller,* 63 Md. 190. It is for that reason that monuments named in deeds are given precedence over courses and distances, because the parties can see the tree, stone, stake, pipe or whatever it may be, which is referred to in the deed, but would require equipment and expert assistance to find a course and distance. Where, for example, a grant is by courses and distances, and calls to monuments, if the beginning and any or all of the boundaries, save one, are lost and the remainder are incapable of proof, the grant does not lose its vitality. *Wilson v. Inloes,* 6 Gill 121.

In denying the appellants relief the trial judge in his opinion below said: "* * * we cannot lose sight of the general principle that, where a survey of a boundary line between two lots would, if accepted, result in a relocation of lines between several different lots and result in the extension of one lot onto the land of a stranger who had never been a part of the

platted subdivision, the Court is reluctant to give much credit to such a survey," citing *Giles v. diRobbio,* 186 Md. 258, 46 A. 2d 611.

In the case now before us the conveyances by the common grantor, Waters, were made before any subdivision plan or development was designed or even contemplated so that the Albright and Selby lots must be satisfied first. *Bryan v. Harvey,* 18 Md. 113. Moreover, in Giles the plaintiff's surveyor testified that he used a call pointed out to him by the plaintiff when surveying the land, and offered no other evidence or proof to support this call. Here we are not concerned with two lots in the same subdivision, but have the general reputation of the community, coupled with the acquiescence of the prior grantors, plus the finding of the pipe at the northeast corner of the Selby lot.

From a careful consideration of the evidence stated above we think the trial judge was clearly erroneous in finding that the appellants had not met the burden of proof of establishing the pipe as a monument at the northeast corner of the lot and misapplied the law when he denied them relief under their amended bill of complaint. Maryland Rule 886 a.

Accordingly the order must be reversed and the case remanded for the passage of a decree granting the appellants the relief prayed.

*Order reversed and case remanded for passage of a decree not inconsistent with this opinion, with costs to appellants, below and on this appeal.*