422 P.2d 525

Lynn S. SCOTT and Ann B. Scott, his wife, and Frank H. Bjorndal and Audrey K. Bjorndal, his wife, Plaintiffs and Appellants,

v.

Wilford HANSEN and Viola Hansen, his wife, Cecil Hansen and LaDonna Hansen, his wife, Marjorie Baker, Darrell A. Tate, Barbara Buckley and Michael E. Tate, Defendants and Respondents.

No. 10580.

Supreme Court of Utah.

Dec. 29, 1966.

1. Las Vegas Hacienda, Inc., v. Gibson, Feb. 3, 1961, 77 Nev. 25, 359 P.2d 85, 87 A.L.R.2d 645; Anno. 87 A.L.R.2d 661.

Kirton & Bettilyon, F. Burton Howard, Salt Lake City, for appellants.

Dwight L. King, Salt Lake City, for respondents.

CROCKETT, Justice.

Plaintiffs sued to quiet title to about five acres of land in the Butlerville area in southeastern Salt Lake County. The district court gave judgment for the defendants, adjoining landowners, and plaintiffs appeal.

The issues are these: (1) Whether the boundary between the plaintiffs' and the defendants' lands is along a county road, referred to in their respective deeds, as the road actually exists, or along a line south of it as the county road is shown on the county recorder's plats; and (2) whether the defendants have nevertheless by adverse possession under color of title established ownership of the land under Secs. 78–12–8 and 9, U.C.A.1953.

The grantor of both properties, one Maggie Thompson, in the year, 1906, conveyed the plaintiffs' tract to their predecessors, describing the north boundary thereof as "along the south side of the county road." Seven years later, in 1913, she conveyed to the defendants' predecessors their tract to the north, describing the south boundary of that tract similarly as being, "along the south side of the county road." The circumstance which gives rise to this controversy is that the county road as it actually exists has always been a meandering road as shown in the drawing below, whereas, it

(.Illustrative Only) N.

Defendants' Property

Quarter Section Line

Actual county road

Disputed Property

County Road as shown by Recorder's Plat

Plaintiffs' Property

18 Utah 2d—20

is shown on the county recorder's plat as a straight east-west line.

As will be seen from the drawing, if the boundary between the properties is regarded as the road as it actually exists, the disputed property belongs to the plaintiffs; whereas, if the boundary is as defendants contend, the straight line marked as a county road on the recorder's plat, the defendants own the land.

 In a situation such as this where a dispute arises as to the boundary between tracts conveyed to the parties by a common grantor, it becomes important to determine if possible the intent of the parties at the time of the conveyance.[1] There are rules of construction which have been adopted for the purpose of assisting in ascertaining and giving effect to such intent.[2]

One of these is that fixed monuments or markers of a permanent nature which can be definitely identified and located take precedence over calls of courses or distances,[3] or plats,[4] or amounts of acreage.[5]

This is so because it is reasonable to assume that the parties are more apt to be familiar with such monuments or markers than with precise measurements, or with recorder's plats; consequently, giving precedence to the call to such a monument or marker results in less possibility of error and a greater likelihood of giving effect to the intent of the parties.[6]

 In applying the principle just stated to this case, the conclusion seems clear that in specifying the county road as the north boundary of the plaintiffs' property; and again in designating it as the south boundary of the defendants' property, the reference was to the county road as it actually existed and was observable by the parties involved, rather than to the theoretical county road shown by the straight line on the county plat. Nor is the point made by the defendants persuasive that the distance along the existing road to the west quarter-section line is farther than the deed's call of

1. Losee v. Jones, 120 Utah 385, 235 P.2d 132; Campbell v. Weisbrod, 73 Idaho 82, 245 P.2d 1052; Delphey v. Savage, 227 Md. 373, 177 A.2d 249.
2. Delphey v. Savage, supra; Wheeler v. Stanolind Oil and Gas Co., 151 Tex. 418, 252 S.W.2d 149; Re West Tenth Street, Borough of Brooklyn, City of New York, 267 N.Y. 212, 196 N.E. 30, 98 A.L.R. 634.
3. Johnson Real Estate Co. v. Nielson, 10 Utah 2d 380, 353 P.2d 918; Home Owners' Loan Corp. v. Dudley, 105 Utah 208, 209, 141 P.2d 160; Lainhart v. Shepherd,

(Ky.) 246 S.W.2d 460; 6 Thompson on Real Property 571 (Perm.Ed.) Sec. 3044.
4. Rowell v. Weinemann, 119 Iowa 256, 93 N.W. 279.
5. Calder v. Hillsboro Land Co., (Fla.App.), 122 So.2d 445; Thompson on Real Property, supra, 576.
6. Bridges v. Thomas, (Fla.App.), 118 So. 2d 549; Thompson on Real Property, supra, 576; Curran v. Maple Island Resort Assn., 308 Mich. 672, 14 N.W.2d 655, citing Moran v. Lezotte, 54 Mich. 83, 88, 19 N.W. 757, 759.

80 rods. Both deeds give the distance as "westerly along the south side of said road 80 rods more or less" to the said quarter-section line. This could just as well be taken to argue against defendants' position: that it relieves the call of exactness and shows the intent that the distance may be "more or less" and that in either event the call runs to said quarter-section line.[7]

The defendants' claim of title by adverse possession under "color of title" is based upon a document subsequent to their deed. In 1935 the decree of distribution in the estate of their father, Andrew Hansen, Jr., who owned before them, distributed the property to them by metes and bounds without mentioning the county road. This is the basis of the defendants' claim of "color of title" to the disputed area. As a result of it, both the defendants and the plaintiffs have paid taxes on the property in their respective descriptions. The plaintiffs have not been in actual physical possession of their property, although they did put up one or two "no dumping" signs and a few feet of fence along the road to prevent the public from dumping refuse upon it. The defendants have a residence to the north on their tract and have farmed portions of it for many years, but none of their farming operation has extended south of the road onto the disputed area.

Section 78–12–8 and 9, U.C.A.1953, which the defendants rely on in claiming title by adverse possession provide in substance that if one is in possession of a "known farm" or other tract of land under a written instrument or conveyance giving color of title he may establish ownership by adverse possession without having actually possessed, cultivated or fenced the whole tract. This appears to be but a codification of the common law doctrine which arose out of the practicalities of possessing land. It is obvious that a man cannot be in actual possession of every square rod of extended tracts of land such as are used, for example, in farming or grazing. The purpose of these statutes is to recognize and deal with this situation by providing that if one takes possession of a portion of a piece of land known as an integrated or unified tract, under circumstances such that others would know that he was claiming the whole tract, that constitutes possession of the whole. The pivotal consideration here is that there must be some actual occupation[8] of the

7. Losee v. Jones, supra; Dwelle v. Greenshields, (Okl.) 305 P.2d 1038; Brewer v. Schammerhorn, 183 Kan. 739, 332 P.2d 526.

8. Dougherty v. Looney, 108 Okl. 279, 236 P. 583; Wachovia Bank & Trust Co. v. Miller, 243 N.C. 1, 89 S.E.2d 765; McCoy v. Anthony Land Co., Inc., 230 Ark. 244, 322 S.W.2d 439; Chilton v. White, 72 W.Va. 545, 78 S.E. 1048; United Fuel Gas Co. v. Dyer, 185 F.2d 99 (4th Cir. 1950); Pender v. Jackson et al., 123 Utah 501, 260 P.2d 542.

property of such character or under such circumstances that the owner knows, or as a man of ordinary prudence should know, that the land was being held as his own by the adverse claimant.[9]

The difficulty with the defendants' position is their assumption that the requirement of possession of the claimed property is fulfilled if a part of the tract described in the document which gives "color of title" is so possessed whether it would give notice to the true owner or not. Inasmuch as the area in dispute here is physically separated from the defendants' property by the existing county road, and the defendants have never farmed or been in actual possession of any part of it, there is no basis upon which it could be regarded as part of a "known farm" or as otherwise unified with the defendants' tract of land. Our attention has not been directed to anything which the defendants have done with respect to possession of the disputed area which was hostile to and inconsistent with the rights of the plaintiffs so they would have notice that the defendants were claiming the property adversely.[10] Accordingly, the defendants' claim of ownership fails because neither mere "color of title" to property, nor their subjective intent to pos-

sess land adversely to the owner, is sufficient to establish title by adverse possession unless the possession is such as to give notice to the owner. This requisite is not met under the circumstances shown here by the defendants' possession of their own adjacent land. If the rule were otherwise, landowners would be placed under the unduly burdensome necessity of periodically checking the property descriptions of their neighbors to see that some document had not been placed of record which encroached upon their land.[11]

Further support of the conclusion we have reached, and correlating with the principle just stated concerning the necessity of notice to the true owner that his property right is being claimed adversely, is found in considering the nature of the adverse possession statutes. They are contained in the chapter entitled, "Limitation of Actions." Like other statutes of limitation, they provide for a time limit in which a claim or defense must be asserted, or it is barred. But all statutes of limitation are predicated upon the proposition that the prescribed period does not begin to run against a party until a cause of action has arisen. In actions for possession of land,

9. 3 Am.Jur.2d Adverse Possession § 47 (1962) and cases therein cited.

10. See Salt Lake Investment Co. v. Fox, 32 Utah 301, 90 P. 564, 13 L.R.A.,N.S., 627.

11. McCoy v. Anthony Land Co., Inc., footnote 8, supra.

this does not occur until the true owner's right of possession has been so invaded as to give rise to a cause of action. In this case the plaintiffs' right to possession of their land had not been so disturbed or encroached upon; consequently the statute had not run against them.[12]

The decree is vacated and the case is remanded to enter judgment in favor of the plaintiffs. Costs to plaintiffs (appellants).

CALLISTER and TUCKETT, JJ., concur.

McDONOUGH, J., heard the arguments but died before the opinion was filed.

HENRIOD, Chief Justice (concurring).

I concur for one reason: The metes and bounds description specifically mentioned exactly 80 rods for three of the courses, but described the fourth as 80 rods "more or less" along a county road. This raised a red flag which a title examiner would question, for inconsistency and lack of specificity in relation to the other three courses. This would indicate that the grantor meant the actual meandering road to be the boundary, not any physically unused road not reflected accurately in the plat.

12. Wheatley v. San Pedro, Los Angeles and Salt Lake Ry. Co., 169 Cal. 505, 147 P. 135.